BICKNELL REALTY COMPANY & another *vs.* BOARD OF APPEAL OF BOSTON & another.

Suffolk. October 7, 1953. — December 30, 1953.

Present: QUA, C.J., LUMMUS, RONAN, SPALDING, & WILLIAMS, JJ.

*Zoning. Equity Pleading and Practice*, Zoning appeal. *Boston.*

A hearing de novo is provided by St. 1941, c. 373, § 18, amending St. 1924, c. 488, § 19, in a suit in equity in the Superior Court by way of appeal from a decision of the board of appeal of Boston; the judge hears all pertinent evidence, not merely that heard by the board, and makes his own findings of fact, upon the basis of which he determines the legal validity of the decision of the board. [679]

A decision of the board of appeal of Boston, granting a variance in the application of the city's zoning law by authorizing the construction of a commercial building to be occupied by stores with office and parking facilities on a vacant lot located in a general residential district near several apartment houses, was not warranted where no buildings had been constructed in the immediate vicinity of the lot for many years and the general situation as to the use and occupancy of land in that vicinity was the same as when the zoning boundaries were first established, although the lot adjoined a nonconforming gasoline filling station and was close to a business district, and the condition of the soil of the lot, a condition extending generally throughout that vicinity, made it impractical to construct an apartment house on the lot. [679–681]

BILL IN EQUITY, filed in the Superior Court on August 7, 1952.

The suit was heard by *Morton*, J. The defendant Franks appealed from the final decree.

*George A. McLaughlin*, (*Charles M. Goldman* with him,) for the defendant Franks.

*Joseph B. Abrams* & *Lawrence R. Cohen*, for the plaintiffs.

RONAN, J. This is an appeal from a final decree annulling a decision of the board of appeal of Boston which granted a variance in the application of the zoning law authorizing the defendant Franks to construct a commercial building in a general residential district.

The locus, a vacant lot containing approximately 18,990 square feet, is located upon the northeasterly corner of Park Drive and Peterborough Street. It is bounded on the northerly side by premises used for a gasoline filling station. This station is located on the corner of Park Drive and Boylston Street and its entrance is from the latter street. It was so located and maintained before the zoning law, St. 1924, c. 488, became effective. Boylston Street and Peterborough Street are roughly parallel as they run westerly to Park Drive. The filling station and the locus are located in a general residential zone and so is the northerly side of Peterborough Street to the east for about 500 feet where it meets a L–65 (local business and residence) district. This last district runs southerly, across Peterborough Street and to the south of Queensberry Street. A boundary dividing the general residential district from a B–80 (business with buildings not more than 80 feet in height) district runs about half way between the southerly side of Boylston Street and the northerly side of Peterborough Street until it reaches a public alley at the rear boundary of the locus, where it turns at a right angle along the alley way and parallel to a part of the rear line of the locus and parallel to the easterly side of the filling station lot to Boylston Street. Easterly from the locus along the northerly side of Peterborough Street is an apartment house, owned by the plaintiff Eilbern Realty Corporation, and containing 100 rooms. The public alley 16 feet wide which we have just mentioned separates the locus from this apartment house. A few other large apartment houses are closely grouped together, occupying all the northerly side of Peterborough Street until the L–65 district is reached. On the southeasterly corner of Park Drive and Peterborough Street is a large brick five story house. It is owned by the plaintiff Bicknell Realty Company. Next to this building and continuing along the southerly side of Peterborough Street is a vacant lot and then another apartment house until the L–65 district is reached. All the area south from the B–80 district line between Boylston Street and Peterborough Street to beyond

Queensberry Street and between the L–65 zone and Park Drive is in a residential district. This district continues far south of Queensberry Street and south of said L–65 district. A portion of this residential district is located opposite the front of the locus across Park Drive and along the Fenway.

The plan and photographs show that the locus occupies a conspicuous position with reference to the Fenway, and is in plain view of some of the various apartment properties on Peterborough Street. It is contemplated to erect a building containing three stores including a clothing store which will be open every week day evening until nine o'clock. The entrances to the proposed building will be from Peterborough Street, which will be the only direct entrance of any commercial building on that part of Peterborough Street with which we are concerned.

The board is authorized to grant a change in the application of the zoning law in respect to a particular parcel of land "where, owing to conditions especially affecting such parcel but not affecting generally the zoning district in which it is located, a literal enforcement of the provisions of this act would involve substantial hardship to the appellant, and where desirable relief may be granted without substantial detriment to the public good and without substantially derogating from the intent and purpose of this act, but not otherwise." St. 1924, c. 488, § 19, as appearing in St. 1941, c. 373, § 18.

The board purported to authorize Franks to erect and maintain a one story building covering 10,000 square feet with a second story having a floor space of 2,000 square feet, to be occupied by three stores, the one nearest to Park Drive by the Clinton Clothing Company, the second a retail store for the sale of kitchen and restaurant supplies, and the third solely as an office for a large food concern for its salesmen. The basement is to be occupied as a garage for the parking of 20 automobiles for patrons and personnel. Around the building, space will be furnished for the parking of 16 automobiles. The second story is to be used for office purposes.

The remedy by certiorari formerly given to those aggrieved

by a decision of the board of appeal in Boston has been superseded by the amendment of St. 1924, c. 488, § 19, by St. 1941, c. 373, § 18, which now provides that an appeal may be had to the Superior Court sitting in equity, which "shall hear all pertinent evidence and determine the facts, and, upon the facts as so determined, annul such decision if found to exceed the authority of such board, or make such other decree as justice and equity may require."

Upon appeal, it is the duty of the judge to hear all the evidence and to find the facts. He is not restricted to the evidence that was introduced before the board. The decision of the board is competent evidence to enable the judge to ascertain what conclusion the board reached in order that he may determine whether upon the facts found by him the decision of the board should stand or should be annulled or should be modified. In a word, the matter is heard de novo and the judge makes his own findings of fact, independent of any findings of the board, and determines the legal validity of the decision of the board upon the facts found by the court, or if the decision of the board is invalid in whole or in part, the court determines what decision the law requires upon the facts found. *Co-Ray Realty Co. Inc.* v. *Board of Zoning Adjustment of Boston,* 328 Mass. 103, 106, and cases cited.

No buildings have been constructed in the immediate vicinity of the locus for twenty-five years, and the general situation as to the use and occupancy of land in such vicinity is the same now as when the zoning boundaries were first established and the locus included in a general residential district. There was evidence that variances had been granted in adjacent zones, but the areas occupied by the apartment houses, the nonconforming site of the filling station, and the area directly in front of the locus on Park Drive have remained substantially unchanged. But it is contended that the locus is on the fringe of a business zone. It is true that a portion of the rear boundary of the locus was adjacent to a business district but it is also true that the locus as it abuts Peterborough Street was included in a residential

district which extended to the east, the west, the north, and the south, for a considerable distance. The boundaries of zones must be placed somewhere. The property on the more restricted side of the boundary may suffer more damage than the less restricted property on the other side of the boundary. It may well be that land in a more restricted area far from a dividing boundary will not be damaged as much as land in the same district but located adjacent to the boundary. Zoning is an exercise of the police power which is asserted in the interests of the public welfare, and the establishment of boundaries, if not done arbitrarily, capriciously and unreasonably, must stand in order to accomplish the legislative objects of stabilizing the use and occupancy of property in different sections of a municipality, of protecting property owners in the various districts, and of preventing the invasion of business into residential sections.

One of the principal contentions of the landowner is that the conditions pertaining to his lot are peculiar to it and different from those connected with other parcels in the district. The judge found that the nature of the soil is such that the construction of an apartment house upon the locus would be impractical because of its cost, especially the cost for the necessary piling to support the structure. He also found that this condition of the soil is not confined to the locus but extends generally throughout the entire Back Bay area in which the locus is situated. This whole area is a filled-in swamp. Some sections have been filled in to a higher level. It was undisputed that the foundations in all of the buildings in this area rest on piling. The defendant Franks is not under any greater handicap than any other owner who intends to build, including the owner of the vacant lot almost directly across Peterborough Street from the locus. This condition, which was not peculiar to the locus, was not within the statutory provision which with other factors empowered the board of appeal to grant the variance. See *Norcross* v. *Board of Appeal of Boston,* 255 Mass. 177, 185; *Otto* v. *Steinhilber,* 282 N. Y. 71, 77; *Hickox* v. *Griffin,* 298 N. Y. 365, 370–371.

The locus is vacant and has never been used for any purpose other than a parking lot in accordance with a variance granted in 1947 by the board of appeal.   The fact that the landowner is unable to put the premises to a more profitable use is a factor to be considered but alone is not an adequate cause for granting a variance.   That power is to be sparingly exercised.   The facts found do not warrant the action of the board.   *Coleman* v. *Board of Appeal of Boston*, 281 Mass. 112.   *Phillips* v. *Board of Appeals of Springfield*, 286 Mass. 469.   *Brackett* v. *Board of Appeal of Boston*, 311 Mass. 52. *Real Properties, Inc.* v. *Board of Appeal of Boston*, 319 Mass. 180.

*Decree affirmed with costs.*