DAVID W. ROBERTS & another[1] vs. SOUTHWESTERN BELL
MOBILE SYSTEMS, INC., & another.[2]

Middlesex. February 5, 1999. - April 30, 1999.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, FRIED, MARSHALL, & IRELAND, JJ.

*Federal Telecommunications Act. Public Utilities,* Telecommunications. *Telecommunications,* Wireless service facility. *Zoning,* Telecommunications facility, Special permit, Judicial review. *Federal Preemption. Statute,* Federal preemption, Construction. *Practice, Civil,* Parties, Costs.

The provisions of the Telecommunications Act of 1996, 47 U.S.C. § 332(c)(7), imposing procedural and substantive obligations on local zoning authorities with respect to the placement, construction, and modification of personal wireless service facilities, do not preempt, under the supremacy clause of the United States Constitution, de novo judicial review, pursuant to G. L. c. 40A, § 17, of all local zoning authority decisions relative to such facilities, where there is no actual, impermissible conflict between the local and Federal laws. [485-491]

The failure of an applicant to file its application for a special permit with the town clerk for three weeks after having filed the application with the planning board did not deprive the planning board of jurisdiction to consider the application, in circumstances in which the application was on file in the town clerk's office before a series of public hearings on the application was held, extending over a period of nine weeks. [492]

An action brought under G. L. c. 40A, § 17, for review of a grant of a special permit to construct a personal wireless service facility was remanded to the Superior Court for consideration of disputed issues of fact regarding the planning board's adherence to the applicable zoning provisions [492-493]; for reconsideration of the abutters' motion to amend their complaint to add necessary parties [493-494]; and for the further taking of relevant evidence, if any, on the issue of the planning board's alleged bias [494-495].

An award of costs against abutters challenging the grant of a special permit was vacated where the matter was remanded for further proceedings in Superior Court; in any event, there was no basis in the record for such an award. [495]

CIVIL ACTION commenced in the Superior Court Department on July 10, 1997.

[1]Jean H. Lawlis.
[2]The planning board of Littleton.

The case was heard by *Robert Malcolm Graham*, J.

The Supreme Judicial Court granted an application for direct appellate review.

*Wendy H. Sibbison* (*Mary A. Barker & Harris Freeman* with her) for the plaintiffs.

*F. Alex Parra* (*Louis N. Levine* with him) for Southwestern Bell Mobile Systems, Inc.

*Judith Pickett* for planning board of Littleton.

*Wayne F. Dennison & Cheryl B. Pinarchick*, for Sprint Spectrum L.P., amicus curiae, submitted a brief.

MARSHALL, J. This is an appeal by two property owners of a judgment entered in the Superior Court dismissing their action challenging a special permit granted to Southwestern Bell Mobile Systems, Inc. (Southwestern Bell). The permit allows Southwestern Bell to construct a one hundred foot wireless telecommunications tower in a residential area of Littleton (town) on land abutting the owners' respective properties. On February 1, 1996, Congress enacted the Telecommunications Act of 1996 (TCA), Pub. L. No. 104-104, 110 Stat. 56 (codified at 47 U.S.C. §§ 151 et seq., as amended). The Act made substantial changes to Federal regulation of telecommunications in recognition of, and to facilitate the spread of, new technologies nationwide. H.R. Conf. Rep. No. 104-458, 104th Cong., 2d Sess. 113 (1996), reprinted in 1996 U.S.C.C.A.N. 124. Prior to the TCA, telecommunications regulation envisioned natural monopolies predicated on one-wire, one-carrier systems. See, e.g., 47 U.S.C. §§ 151-613. The TCA abolished artificial distinctions among signal delivery methods and opened markets to multiple providers employing various service delivery technologies.[3] See, e.g., H.R. Conf. Rep. No. 104-458 at 148, 159 (1996), reprinted in 1996 U.S.C.C.A.N. 148, 172.

The new emphasis on competition is reflected in the many provisions of the TCA that seek to accelerate private sector deployment of new telecommunications technologies. Personal wireless services (PWS) technology is among those the TCA

---

[3]The TCA contains provisions concerning the development of competitive telecommunications markets employing various technologies; the "Bell Operating Companies"; broadcast services; cable services; and the control of obscenity and violence on the Internet and over broadcast services. See Telecommunications Act of 1996, Pub. L. No. 104-104, 110 Stat. 56 (codified at 47 U.S.C. §§ 151 et seq., as amended).

specifically addresses. See, e.g., 47 U.S.C. § 332(c)(7).[4] PWS technology sends low-power, high-frequency radio signals among relay towers (PWS towers) and switching stations. For signals to be available throughout an area, or cell, a network of PWS towers and associated support structures must be placed in a lattice or honeycomb grid. If a tower is not present at a site mandated by the lattice arrangement, a coverage gap arises. Coverage gaps prevent customers from receiving and sending signals, and when customers pass through a coverage gap their calls are disconnected. Such gaps not only inconvenience current customers, but may also impede the spread of the technology by making it less useful and less attractive to potential customers. See *Primeco Personal Communications, L.P.* v. *Fox Lake,* 26 F. Supp. 2d 1052, 1054 (N.D. Ill. 1998); Note, Wading Through the Rhetoric of the Telecommunications Act of 1996: Uncertainty of Local Zoning Authority Over Wireless Telecommunications Tower Siting, 22 Vt. L. Rev. 461, 467-477 (1997).

The PWS towers must be of sufficient height and placed at sufficient elevation to allow for the passage of the signals. The resulting visibility of PWS towers frequently spawns local resistance to their placement within communities. To facilitate the spread of this technology, and to promote transparency and accountability in local zoning decisions regarding permits for PWS providers, the TCA imposes procedural and substantive obligations on local zoning authorities. See 47 U.S.C. § 332(c)(7), entitled "Preservation of local zoning authority,"

---

[4]The TCA defines "personal wireless services" (PWS) to include "commercial mobile services," which include cellular telephone services (both analog and digital), personal communications services, and mobile radio and paging services. 47 U.S.C. § 332(c)(7)(C)(i). Cellular telephone technology has been available since shortly after World War II, but the Federal Communications Commission (FCC) did not invite telephone service providers to apply for cellular spectrum licenses until 1981. Personal communications services (PCS) technology is based on cellular wireless technology, but has slightly different operating characteristics, such as its use of higher frequencies of the electromagnetic spectrum and the consequent need to site towers in closer proximity for signal transmission. The use of both cellular and PCS technologies is increasing rapidly. Southwestern Bell's special permit application stated that it seeks to build a "wireless telecommunications tower and facilities." It is not relevant to our holding whether the tower would support cellular telephone or PCS technology. We refer throughout simply to PWS technology.

the full text of which is set forth in the margin.[5] Substantively, local regulation may not "unreasonably discriminate" among PWS providers, nor may it "prohibit or have the effect of prohibiting" the provision of PWS services. 47 U.S.C. § 332(c)(7)(B)(i). There may be no regulation of facilities "on

[5]Title 47 U.S.C. § 332(c)(7) provides as follows:

"(A) General authority    .

"Except as provided in this paragraph, nothing in this chapter shall limit or affect the authority of a State or local government or instrumentality thereof over decisions regarding the placement, construction, and modification of personal wireless service facilities.

"(B) Limitations

"(i) The regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof —

"(I) shall not unreasonably discriminate among providers of functionally equivalent services; and

"(II) shall not prohibit or have the effect of prohibiting the provision of personal wireless services.

"(ii) A State or local government or instrumentality thereof shall act on any request for authorization to place, construct, or modify personal wireless service facilities within a reasonable period of time after the request is duly filed with such government or instrumentality, taking into account the nature and scope of such request.

"(iii) Any decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record.

"(iv) No State or local government or instrumentality thereof may regulate the placement, construction, and modification of personal wireless service facilities on the basis of the environmental effects of radio frequency emissions to the extent that such facilities comply with the Commission's regulations concerning such emissions.

"(v) Any person adversely affected by any final action or failure to act by a State or local government or any instrumentality thereof that is inconsistent with this subparagraph may, within 30 days after such action or failure to act, commence an action in any court of competent jurisdiction. The court shall hear and decide such action on an expedited basis. Any person adversely affected by an act or failure to act by a State or local government or any instrumentality thereof that is inconsistent with clause (iv) may petition the Commission for relief."

the basis of the environmental effects of radio frequency emissions," other than as required by the Federal Communications Commission (FCC). 47 U.S.C. § 332(c)(7)(B)(iv). Procedurally, a local zoning authority must act "within a reasonable period of time" on any request regarding a PWS facility, "taking into account the nature and scope of such request." 47 U.S.C. § 332(c)(7)(B)(ii). Any local authority decision "to deny a request" to site such a facility must be "in writing and supported by substantial evidence contained in a written record." 47 U.S.C. § 332(c)(7)(B)(iii). Congress further provided that expedited redress be available in either Federal or State court to "[a]ny person adversely affected" by an act of a local zoning authority "that is inconsistent with this subparagraph." 47 U.S.C. § 332(c)(7)(B)(v).[6]

Subject to these enumerated constraints, the TCA recognizes and protects local autonomy regarding PWS facility placement. Congress was explicit that the TCA does not preempt State and local authority with respect to any zoning and land use issues pertaining to PWS facilities, other than as delineated in § 332(c)(7) of the TCA. See 47 U.S.C. § 332(c)(7)(A). At issue in this case is whether the TCA requirement of local zoning authorities that any decision "to deny" a request to construct a cellular facility "be in writing and supported by substantial evidence contained in a written record," 47 U.S.C. § 332(c)(7)(B)(iii), preempts, under the supremacy clause of the United States Constitution, de novo judicial review of all local zoning authority decisions pursuant to G. L. c. 40A, § 17. We hold that it does not. We vacate, in part, the judgment of the Superior Court and remand the case for further proceedings consistent with this opinion.

I

In 1997, Southwestern Bell applied to the planning board of Littleton (planning board) for a special permit and site plan approval to build a PWS facility.[7] Southwestern Bell proposed to build the facility on a residentially zoned parcel containing a

---

[6]The TCA does not provide for expedited judicial review of any local zoning authority act that is "consistent" with its provisions. Cf. 47 U.S.C. § 332(c)(7)(v).

[7]The PWS facility would consist of a one hundred foot tall lattice tower, an equipment shelter, and a generator with a propane storage tank. It would be

water standpipe (locus)[8] on Newtown Hill in the town. The plaintiffs, David W. Roberts (Roberts) and Jean H. Lawlis (together, abutters), own parcels of land immediately adjacent either to the locus, or to an easement burdened by use of the locus.[9] The abutters were among those who opposed Southwestern Bell's application in public planning board hearings. On June 19, 1997, the planning board granted Southwestern Bell a special permit and site plan approval. Pursuant to G. L. c. 40A, § 17,[10] the abutters sought judicial review of that decision, naming Southwestern Bell and the planning board as defendants.

surrounded by a fence and partially screened by a row of trees. The site would contain no parking facilities, hazard lighting, or water or sewage facilities.

[8]The locus is a nonconforming lot of 31,240 square feet in the Newtown Hill section of the town. It is zoned for residential use and is located in an area of single family homes and conservation land. In 1974, the Littleton board of water commissioners took the locus by eminent domain "for the purposes of [the town's] public water supply." The town's board of water commissioners maintains control of the property. G. L. c. 40, §§ 15B, 38, 39, 39A-39E. G. L. c. 41, §§ 61A, 61B. A 1.8 million gallon water standpipe, standing approximately fifty-five feet tall, is the only structure currently on the locus. The proposed PWS facility would take up approximately 4,000 of the 31,240 square feet locus.

[9]The easement is twenty feet wide and allows access to the locus from a public road. It also was taken by eminent domain in 1974 "for all purposes for which town ways are customarily used in the Town and including particularly the right to construct, lay, maintain, repair and from time to time replace . . . utility lines in, over and through said easement." In 1978, the town purchased and conveyed to a local conservation commission for conservation purposes approximately ninety-seven acres of land adjacent to the locus, including the fee underlying the easement. The conveyance was "subject to and with the benefit of the 20 foot wide easement" previously acquired by the water department.

[10]General Laws c. 40A, § 17, states in relevant part:

"Any person aggrieved by a decision of the board of appeals or any special permit granting authority or by the failure of the board of appeals to take final action concerning any appeal, application or petition within the required time or by the failure of any special permit granting authority to take final action concerning any application for a special permit within the required time, whether or not previously a party to the proceeding, or any municipal officer or board may appeal to the land court department [or] the superior court department in which the land concerned is situated . . . by bringing an action within twenty days after the decision has been filed in the office of the city or town clerk. . . . Notice of the action with a copy of the complaint shall be given to such city or town clerk so as to be received within such twenty days. The complaint shall allege that the decision exceeds the authority of the board or authority, and any facts pertinent to the issue, and shall contain a prayer

Southwestern Bell moved for summary judgment on the existing administrative record.[11] It claimed that the TCA preempted G. L. c. 40A, § 17, and that any review of the planning board's decision should be limited to the existing record using the "substantial evidence" standard contained in 47 U.S.C. § 332(c)(7)(B)(iii). A judge in the Superior Court agreed. He concluded that the written record of the planning board contained "substantial evidence" to support the approval of the special permit, granted Southwestern Bell's motion for summary judgment, and ordered that summary judgment enter in favor of the planning board "to the same extent as to Southwestern Bell."[12] He awarded costs to Southwestern Bell and the planning board.

Southwestern Bell had also moved to dismiss five counts of the abutters' second amended complaint for failure to state claims upon which relief could be granted, and for failure to name necessary parties.[13] Those counts alleged that (1) Southwestern Bell's failure to file its application with the town clerk as required by G. L. c. 40A, § 9, deprived the planning board of jurisdiction to consider the application; (2) the planning board did not have jurisdiction to change the use of the locus owned by the water department or (3) to change the use of the locus because the easement runs over conservation land; (4) the special permit constituted spot zoning; and (5) the planning board's decision-making process was tainted by bias and

that the decision be annulled. . . .

"The court shall hear all evidence pertinent to the authority of the board or special permit granting authority and determine the facts, and, upon the facts as so determined, annul such decision if found to exceed the authority of such board or special permit granting authority or make such other decree as justice and equity may require."

[11]The abutters challenged the accuracy and admissibility of the record. See *infra.*

[12]In the memorandum accompanying his order, the judge stated: "If the intent of the language from the [TCA] . . . is to give certain protections to cellular providers by not allowing local governments to deny permits without substantial evidence in a written record then it follows that where the local authority does submit a written record, as here, the same standard should apply" (footnote omitted).

[13]Roberts filed his original complaint on July 10, 1997. Twelve days later he filed an amended complaint as of right. Leave to file a motion to amend his complaint, adding Jean H. Lawlis as a plaintiff, was allowed in September, 1997. A further motion for leave to amend the complaint and an accompanying third amended complaint were filed on January 2, 1998. The judge in the Superior Court did not rule on that motion.

violated the abutters' due process rights. The judge granted Southwestern Bell's motion. He again ordered that partial summary judgment and dismissal of specific counts in favor of the planning board be allowed "to the same extent as to Southwestern Bell."

Southwestern Bell also moved to dismiss the second amended complaint pursuant to Mass. R. Civ. P. 12 (b) (1), 365 Mass. 754 (1974), claiming that the abutters were not "person[s] aggrieved" under G. L. c. 40A, § 17. While the judge's order does not specifically reference this motion, in his memorandum of decision he concluded that the abutters did have standing to challenge the decision of the planning board, citing *Marashlian v. Zoning Bd. of Appeals of Newburyport,* 421 Mass. 719 (1996). Southwestern Bell does not appeal from this determination.

The abutters took an appeal from the final judgment in the Superior Court dismissing their action and awarding costs, including all orders "underlying" the judgment. We granted their application for direct appellate review.[14]

## II

Southwestern Bell argues that the TCA preempts de novo judicial review of the planning board's decision to grant its special permit on two grounds: (1) it would frustrate the Federal scheme embodied in the TCA "to accelerate rapidly private sector deployment of advanced telecommunications technologies," H.R. Conf. Rep. No. 104-458 at 113 (1996), reprinted in 1996 U.S.C.C.A.N. 124; and (2) de novo determination of the facts, as required by G. L. c. 40A, § 17, conflicts with the requirement of 47 U.S.C. § 332(c)(7)(B)(iii) that a decision of a planning board to deny a request "be in writing and supported by substantial evidence contained in a written record."

Massachusetts is one of several States that provide for de novo review of local zoning authority decisions. G. L. c. 40A, § 17.[15] See *Bicknell Realty Co.* v. *Board of Appeal of Boston,* 330 Mass. 676, 679 (1953). On appeal to the Superior Court or

[14]The abutters' brief states that Roberts now appeals only the award of costs.

[15]For example, Arkansas, Ark. Code Ann. § 14-56-425 (Michie 1998); Oklahoma, Okla. Stat. Ann. tit. 19, § 866.24 (West 1988); and Vermont, Vt. Stat. Ann. § 4472(a) (1992 & Supp. 1998), provide for de novo judicial review of zoning appeals in all circumstances. In Vermont such review is undertaken "as though no action whatever had been held prior thereto,"

Land Court, a judge determines the legal validity of a zoning board decision on the facts found by him; he gives no evidentiary weight to the board's findings. *Josephs* v. *Board of Appeals of Brookline*, 362 Mass. 290, 295 (1972), and cases cited. Judicial review is nevertheless circumscribed: the decision of the board "cannot be disturbed unless it is based on a legally untenable ground, or is unreasonable, whimsical, capricious or arbitrary." *MacGibbon* v. *Board of Appeals of Duxbury*, 356 Mass. 635, 639 (1970), citing *Gulf Oil Corp.* v. *Board of Appeals of Framingham*, 355 Mass. 275, 277 (1969). On the other hand, the substantial evidence standard of review of an administrative record "goes to the reasonableness of what the agency did on the basis of the evidence before it." *United States* v. *Carlo Bianchi & Co.*, 373 U.S. 709, 715 (1963). We consider whether the TCA preempts G. L. c. 40A, § 17, and whether all decisions of a local zoning authority concerning "a request to place, construct, or modify personal wireless service facilities," 42 U.S.C. § 332(c)(7)(B)(iii), must be reviewed on the record of the proceedings before the local authority, whether the board denied or granted the request.

"State law, including municipal regulations, can be preempted by an act of Congress if the State law 'conflicts with federal law or would frustrate the federal scheme, or [if] the courts discern from the totality of the circumstances that Congress sought to occupy the field to the exclusion of the States.' " *Arthur D. Little, Inc.* v. *Commissioner of Health & Hosps. of Cambridge*, 395 Mass. 535, 548 (1985), quoting *Metropolitan Life Ins. Co.* v. *Massachusetts*, 471 U.S. 724, 747-748 (1985). In determining whether State law has been preempted, "we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Arthur D. Little, Inc.* v. *Commissioner of Health & Hosps. of Cambridge*,

---

*Chioffi* v. *Winooski Zoning Bd.*, 151 Vt. 9, 11 (1989), quoting *In re Poole*, 136 Vt. 242, 245 (1978). In Oklahoma the trial court "has the same power as the Board to grant or to deny a variance." *Bankoff* v. *Board of Adjustment of Wagoner County*, 875 P.2d 1138, 1143 (Okla. 1994), quoting *Vinson* v. *Medley*, 737 P.2d 932, 938 (Okla. 1987). Other States, including California, Cal. Civ. Proc. Code § 1094.5 (West 1980 & Supp. 1999); Iowa, Iowa Code Ann. §§ 335.21 (West 1994), 414.18 (West 1992); Louisiana, La. Rev. Stat. Ann. § 33:4721 (West 1988); and Pennsylvania, 53 Pa. Cons. Stat. Ann. § 11005-A (West 1997), employ standards of review combining de novo and abuse of discretion standards.

*supra* at 549, quoting *Pacific Gas & Elec. Co.* v. *State Energy Resources Conservation & Dev. Comm'n,* 461 U.S. 190, 206 (1983). See *Louisiana Pub. Serv. Comm'n* v. *FCC,* 476 U.S. 355, 369 (1986) ("critical question in any pre-emption analysis is always whether Congress intended that [F]ederal regulation supersede [S]tate law").

Congress, of course, expressly did not seek to occupy the field, and nothing in the TCA or its legislative history suggests that Congress intended to supersede Massachusetts's statutory provision for de novo review of local authority zoning decisions. To the contrary, the first paragraph of the applicable section of the TCA provides that "[e]xcept as provided in this paragraph, nothing in this chapter shall limit or affect the authority of a State or local government" over siting decisions of PWS facilities, 47 U.S.C. § 332(c)(7)(A), and "this paragraph" has no such provision.[16] The legislative history is equally clear: "The conference agreement creates a new section 704 which prevents [FCC] preemption of local and State land use decisions and preserves the authority of State and local governments over zoning and land use matters except in the limited circumstances set forth in the conference agreement." H.R. Conf. Rep. No. 104-458 at 207-208 (1996), reprinted in 1996 U.S.C.C.A.N. 222. Particularly where the subject of the Federal provisions at issue, here zoning and local land use regulation, is one traditionally within the purview of State and local government, Federal law will not preempt unless that is the clear and manifest intent of Congress.[17] See *Jones* v. *Rath Packing Co.,* 430 U.S. 519, 525 (1977). See also *Arthur D. Little, Inc.* v.

---

[16]In *United States* v. *Carlo Bianchi & Co.,* 373 U.S. 709, 715 (1963), the Supreme Court held that, when Congress provides for review of a Federal agency action but fails to set forth the applicable standards or procedures, the substantial evidence standard should be applied. Title 47 U.S.C. § 332(c)(7)(B)(v) does not include any standard or scope of review. But G. L. c. 40A, § 17, establishes the State standard of review for local zoning authority actions. Because Congress made clear that the TCA did not affect State or local authority over the siting of PWS facilities except as expressly provided, Congress must have intended that the State standard of review be applied.

[17]"Zoning has always been treated as a local matter. The creation and modification of zones are matters of municipal legislation. The board of appeals is a local board familiar with local conditions." *Pendergast* v. *Board of Appeals of Barnstable,* 331 Mass. 555, 557 (1954). See *Sylvia Dev. Corp.* v. *Calvert County,* 48 F.3d 810, 828 (4th Cir. 1995) ("[l]and-use decisions are a core function of local government"); *Primeco Personal Communications, L.P.* v. *Fox Lake,* 26 F. Supp. 2d 1052, 1062 (N.D. Ill. 1998) ("issues of land use

*Commissioner of Health & Hosps. of Cambridge, supra* at 546, quoting *San Diego Bldg. Trades Council* v. *Garmon*, 359 U.S. 236, 243-244 (1959) ("this court, and the United States Supreme Court, have been particularly reluctant to overturn State laws which are 'deeply rooted in local feeling and responsibility' ").

Recognizing that the language of the TCA does not afford it the relief it seeks, Southwestern Bell argues that Federal preemption arises because de novo judicial review "would frustrate the federal scheme," *Metropolitan Life Ins. Co.* v. *Massachusetts, supra* at 747, favoring rapid zoning determinations for PWS facility siting requests. While it is clear that Congress intended to encourage the rapid deployment of new telecommunications technologies, Congress simultaneously made clear that it had no intention of interfering with States' zoning power, except in the limited circumstances provided in the statute. De novo judicial review is not circumscribed by the circumstances enumerated. The statute requires that siting decisions be made by local authorities "within a reasonable period of time." 47 U.S.C. § 332(c)(7)(B)(ii).[18] Subparagraph (v), in turn, provides that an appeal by any person "adversely affected" by a decision of a planning board "that is inconsistent with this subparagraph" shall be heard and decided by a court "on an expedited basis." 47 U.S.C. § 332(c)(7)(B)(v). "Expedited" review is mandated only where the "final action" of the planning board "is inconsistent with this subparagraph," and Southwestern Bell makes no claim that the planning board's decision is inconsistent with 47 U.S.C. § 332(c)(7)(B). In any event, Southwestern Bell makes no reasonable argument why

---

are distinctly local and therefore fall on the state-side of the federalism divide").

[18]The conference report explains that even this requirement is circumscribed:

"Under subsection (c)(7)(B)(ii), decisions are to be rendered in a reasonable period of time, taking into account the nature and scope of each request. If a request for placement of a personal wireless service facility involves a zoning variance or a public hearing or comment process, the time period for rendering such a decision will be the usual period under such circumstances. *It is not the intent of this provision to give preferential treatment to the personal wireless service industry in the processing of requests, or to subject their requests to any but the generally applicable time frames for zoning decision* (emphasis added)."

H.R. Conf. Rep. No. 104-458, 104th Cong., 2d Sess. 208 (1996), reprinted in 1996 U.S.C.C.A.N. 223.

the review provided under G. L. c. 40A, § 17, does not satisfy the expedited review provision of subparagraph (v), assuming that it applies. General Laws c. 40A, § 17, seventh par., provides that all zoning appeals "shall have precedence over all other civil actions and proceedings." See Superior Court Standing Order 1-88, providing that zoning appeals pursuant to G. L. c. 40A be on the "Fast Track." Massachusetts already mandates the expediting of zoning appeals.[19] See *United States Cellular Corp.* v. *Board of Adjustment of Des Moines*, 589 N.W.2d 712, 716 (Iowa 1999) (noting favorably trial court's de novo review of zoning authority denial of communications tower special permit).

While several courts have noted the TCA's emphasis on increasing the ability of telecommunications providers to obtain permits in an expedited manner, see, e.g., *Sprint Spectrum L.P.* v. *Easton*, 982 F. Supp. 47, 49-50 (D. Mass. 1997); *Paging, Inc.* v. *Board of Zoning Appeals for the County of Montgomery*, 957 F. Supp. 805, 807 (W.D. Va. 1997), Congress did not intend that speed be the only consideration of a reviewing court. Congress certainly intended to protect providers of PWS services from irrational or substanceless decisions by local authorities who might bend to community opposition to these facilities. It did not express any intent to impair the rights of abutting property owners specifically protected by State law.[20] Congress carefully crafted the language of the statute authorizing expedited judicial

---

[19]Southwestern Bell and Sprint Spectrum L.P., an amicus curiae, suggest a parade of horribles attendant to de novo judicial review: lengthy, duplicative hearings in the Superior Court, "dramatically" increasing the time and expense required to bring PWS facility siting appeals to conclusion. We reject any such suggestion. Judges in the Superior or Land Court will be aware that a purpose of the Federal legislation is to accelerate private sector deployment of telecommunications technologies, and may be relied on to act accordingly, as the motion judge did in this case. Massachusetts judges are not subject to the whims of community pressures that Congress anticipated might be brought to bear on local zoning authorities.

We also reject the suggestion of the amicus that property owners who have standing to challenge decisions of local zoning boards will "withhold evidence" before the authority in order to obtain an unfair advantage over PWS providers. Property owners, particularly individuals, who have standing to challenge a zoning board decision (a narrowly defined class) will have little interest in prolonging disputes and incurring the sometimes substantial costs of judicial appeals.

[20]We reject the suggestion that logic dictates that the substantial evidence standard must define the scope of review of all appeals of PWS siting decisions. "The term 'substantial evidence' . . . has become a term of art to

review.[21] "[T]he statute provides a clear, detailed process that allows quick and complete remedies for individuals *improperly denied permission* to erect a personal wireless communication tower. Given this carefully drafted provision, and the absence of any indicia of contrary congressional intent, it is manifest that Congress provided precisely the remedies it considered appropriate when drafting the TCA." *National Telecommunication Advisors, Inc.* v. *Chicopee*, 16 F. Supp. 2d 117, 122 (D. Mass. 1998) (emphasis added).[22]

Federal preemption of State law may also arise if the State law is in "actual conflict" with Federal law. *Louisiana Pub. Serv. Comm'n* v. *FCC*, 476 U.S. 355, 368 (1986). Southwestern Bell argues that judicial de novo fact finding as required by G. L. c. 40A, § 17, is in "actual conflict" with 47 U.S.C. § 332(c)(7)(B)(iii) which, it claims, operates as a burden shifting provision, placing on the "opponent" of a siting request the

---

describe the basis on which an administrative record is to be judged by a reviewing court." *United States* v. *Carlo Bianchi & Co.*, *supra* at 715. Had Congress intended to employ that "term of art" in § 332(c)(7)(B)(v) of its carefully crafted statute, it readily could have done so.

[21]The original draft of the legislation released by the House Committee on Commerce required the FCC to establish "a uniform national policy for the siting of Commercial Mobile Radio Service (CMRS) facilities for antennas, cell sites and other infrastructure-related equipment necessary to provide efficient wireless telecommunications services to the public." H.R. Rep. No. 104-204, 104th Cong., 2d Sess. 94 (1995), reprinted in 1996 U.S.C.C.A.N. 61. The TCA as enacted "prevents [FCC] preemption of local and State land use decisions." Termination of any relevant pending FCC rulemaking was also ordered. H.R. Conf. Rep. No. 104-458 at 207-208 (1996), reprinted in 1996 U.S.C.C.A.N. 222. Although Congress considered establishing a national standard for zoning decisions on the siting of cellular facilities, H.R. Rep. No. 104-204 at 94 (1996), reprinted in 1996 U.S.C.C.A.N. 60-61, the scheme ultimately passed in the TCA is one in which local zoning authorities retain "authority to determine placement of [cellular towers] but [they] must do so in a reasonable and non-discriminatory manner." Telecommunications Conf. Staff Recommendations for Resol. of Issues on Pub. L. 104-104, at par. 28, Cellular Facilities Siting (Dec. 6, 1995).

[22]The conference report condemns local zoning authority decisions that "unreasonably favor one competitor over another" but emphasizes the conferees' intent that the discrimination clause preserve for localities "the flexibility to treat facilities that create different visual, aesthetic, or safety concerns differently to the extent permitted under generally applicable zoning requirements even if those facilities provide functionally equivalent services." H.R. Conf. Rep. No. 104-458 at 208 (1996), reprinted in 1996 U.S.C.C.A.N. 222. See *AT & T Wireless PCS, Inc.* v. *City Council of Va. Beach*, 155 F.3d 423, 427 n.3 (4th Cir. 1998).

obligation to place in the administrative record substantial evidence to support denial of the request. We do not interpret § 332(c)(7)(B)(iii) to shift the burden between a PWS provider seeking site approval and a neighboring property owner with standing to appeal from a decision of a local zoning authority. Rather, it sets forth standards that a local authority must meet if it denies a siting request: the denial must be in writing, and supported by substantial evidence contained in a written record.[23] Congress enacted these standards to prevent local authorities from "mask[ing] hostility to wireless communications facilities with unreasoned denials that make only vague references to applicable legal standards." *AT & T Wireless Servs. of Fla., Inc.* v. *Orange County*, 982 F. Supp. 856, 860 (M.D. Fla. 1997). Subparagraph (B)(iii) says nothing about the burden of any "opponent" of a siting request. To support a claim of preemption, the defendants are "required to prove their case with hard evidence of conflict, and not merely with unsupported pronouncements as to [Federal] 'policy.'" *Grocery Mfrs. of Am., Inc.* v. *Department of Pub. Health*, 379 Mass. 70, 81-82 (1979), quoting *Kargman* v. *Sullivan*, 552 F.2d 2, 6 (1st Cir. 1977). They have not done so. Congress intended to leave to the States their traditional zoning authority, provided that PWS facilities were not banned outright, that providers were treated equally, and that any local authority decision to deny a permit was not arbitrary. 42 U.S.C. § 332(c)(7)(B). Where, as here, there is no "actual, impermissible conflict between the local and federal law," *Kargman* v. *Sullivan, supra,* preemption does not arise.

## III

On appeal the abutters raise multiple additional claims, independent of their challenge to the motion judge's ruling on

---

[23]Several courts have noted that, under the TCA, a local authority that denies a siting request bears the burden of proof on appeal. See, e.g., *Sprint Spectrum L.P.* v. *North Stonington*, 12 F. Supp. 2d 247, 254 (D. Conn. 1998); *Cellco Partnership* v. *Town Plan & Zoning Comm'n of Farmington*, 3 F. Supp. 2d 178, 182 (D. Conn. 1998); *Smart SMR of N.Y., Inc.* v. *Zoning Comm'n of Stratford*, 995 F. Supp. 52, 56 (D. Conn. 1998); *Sprint Spectrum L.P.* v. *Easton*, 982 F. Supp. 47, 49 (D. Mass. 1997). But see *Cellular Tel. Co.* v. *Oyster Bay*, 166 F.3d 490, 496 (2d Cir. 1999), and cases cited (issue of burden on appeal from denial of permit by local authority under TCA not resolved). To our knowledge, no court has held that 47 U.S.C. § 332(c)(7)(B)(iii) shifts the burden of proof in favor of PWS providers and against property owners with standing to appeal from a zoning decision.

preemption. These claims concern motions to dismiss filed by the defendants in the Superior Court regarding various counts in the second amended complaint and granted by the motion judge.

(a) In count one of their second amended complaint, the abutters alleged that Southwestern Bell had failed to file its application for a special permit and site plan approval with the Littleton town clerk, as required by G. L. c. 40A, § 9,[24] thereby depriving the planning board of jurisdiction to consider the application. A provision of the Littleton zoning code requires an applicant to file its application for a special permit with the planning board; the applicant then sends a copy to the town clerk. See Littleton Code, Zoning § 173-7(B). Southwestern Bell filed its application with the planning board on or about March 17, 1997. A copy of the special permit application, dated April 7, 1997, was thereafter available in the town clerk's office. The application was considered at public hearings on April 9, April 30, May 29, and June 12, 1997, and approved on June 19, 1997. In this case Southwestern Bell's application was available for inspection from the town clerk by members of the public before the public hearings.[25] The abutters do not claim that they were prejudiced because Southwestern Bell's application was not filed directly with the town clerk. We agree with the motion judge's ruling that "not every failure to precisely follow the procedural requirements of Chapter 40A is a jurisdictional defect." See *Schulte* v. *Director of the Div. of Employment Sec.*, 369 Mass. 74, 79-80 (1975); *Richardson* v. *Zoning Bd. of Appeals of Framingham*, 351 Mass. 375, 376-377 (1966). The order dismissing count one of the second amended complaint is affirmed.

(b) In counts two and four of the second amended complaint the abutters alleged that the planning board did not adhere to the town's recently adopted changes to its zoning code regard-

---

[24]General Laws c. 40A, § 9, states in relevant part:

"Each application for a special permit shall be filed by the petitioner with the city or town clerk and a copy of said application, including the date and time of filing certified by the city or town clerk, shall be filed forthwith by the petitioner with the special permit granting authority."

[25]We agree that "[t]he filing requirements serve important purposes of allowing ready public access to the petition," and that "[t]he clerk's office is the repository to which interested persons and the parties may confidently look for the procedural and substantive detail of a board's actions." *Racette* v. *Zoning Bd. of Appeals of Gardner*, 27 Mass. App. Ct. 617, 619 & n.3 (1989).

ing the siting of PWS facilities,[26] nor did it require Southwestern Bell to do so. The new code includes a provision requiring special permit applicants to "demonstrate to the satisfaction of the Planning Board that the location of the tower is necessary and that the size and height is the minimum necessary for the purpose." Littleton Code, Zoning § 173-131(B)(8). The code also requires applicants to submit engineering reports concerning the specifications of the proposed tower design, and to support the asserted need for a tower at a proposed location. See Littleton Code, Zoning § 173-129(C). The abutters alleged that Southwestern Bell did not submit such engineering reports. Confining his review to the record before the planning board, the motion judge rejected these claims. These allegations raise disputed issues of fact, and will need to be resolved on the record to be developed on remand. The order dismissing counts two and four of the second amended complaint is vacated.

(c) At an annual meeting held on May 5 and 12, 1997, the board of selectmen of the town voted to lease a portion of the water department's property on Newtown Hill, the locus, for the siting of a PWS facility. On May 16, 1997, the selectmen signed an option and a ten-year lease agreement with Southwestern Bell. In counts five, six, and seven of their second amended complaint the abutters alleged in essence that the board of water commissioners improperly leased water department property for a use other than that for which it was taken by eminent domain, that the planning board's decision constituted an improper alteration of the use of the easement over conservation land in violation of art. 97 of the Amendments to the Massachusetts Constitution, and that the town's telecommunications zoning code constituted unlawful spot zoning.[27] The abutters named neither the town nor the board of water commissioners as defendants in their second amended complaint. Southwestern Bell moved to dismiss these counts for failure to state a claim on which relief could be granted and for failure to name necessary parties. Mass. R. Civ. P. 12 (b) (6) and (7), 365 Mass. 754 (1974). The abutters responded with a motion for leave to amend

---

[26]On February 10, 1997, the town adopted changes to its zoning code governing the placement of PWS facilities. The code now provides for the siting of PWS facilities by special permits to be issued by the planning board. Littleton Code, Zoning § 173-128(B).

[27]The office of the Attorney General notified the town on May 13, 1997, that the code's preference for siting such facilities on municipal land violated the uniformity provisions of the Zoning Act, G. L. c. 40A, § 4.

their complaint and a proposed third amended complaint naming the building commissioner of the town, the town, and the members of the board of water commissioners as defendants.

In his memorandum accompanying his order dismissing these counts the motion judge stated that he was taking no action on the motion to amend the complaint to add these parties, and would "for now ignore[] the fact that other parties are necessary for specific actions." The judge went on to conclude, however, that the town had acted within its authority when it leased the property, that the grant of the special permit did not, as a matter of law, constitute spot zoning,[28] and that the proposed increase in the use of the easement did not implicate art. 97 of the Amendments to the Massachusetts Constitution. On remand, the judge will be required to rule on the abutters' motion to amend their complaint for a third time. The dismissal of counts five, six, and seven of the second amended complaint is affirmed on the sole ground that parties necessary for an adjudication of these claims were not added. We express no view on the merits of the abutters' motion to amend their complaint to add any parties, except that any such motion should be considered in light of the purposes of the TCA.

(d) In count eight of their second amended complaint the abutters alleged that the planning board was improperly biased in favor of Southwestern Bell, and that bias so permeated the planning board proceedings as to violate the abutters' due process rights.[29] The judge concluded as a matter of law that "any taint due to discussions of an idea to use the current

---

[28]We have held as a matter of law that the grant of a special permit cannot constitute spot zoning. *Kiss* v. *Board of Appeals of Longmeadow*, 371 Mass. 147, 156 (1976). "A special permit is granted pursuant to the literal language of the zoning regulations. It does not, in any sense, effect an amendment of the zoning ordinance. . . . [A planning board] is an administrative body which may be authorized to exercise quasi-judicial powers. It employs such powers when it receives and processes variance applications, and when it hears and grants or denies applications for special permits. It is a body without legislative authority. . . . As a special permit is not an amendment, it cannot constitute spot zoning." *Id.* at 156-157, quoting 3 R. Anderson, American Law of Zoning § 15.04 (1968).

[29]The abutters alleged that, prior to the public hearings on Southwestern Bell's application, a meeting was held at which a Southwestern Bell representative, the town administrator, the general manager of the water department, and the chairman of the planning board allegedly discussed whether certain water department properties might be amenable to use by Southwestern Bell.

proposed site was overcome by the subsequent public meetings." The existing record does not substantiate the violation of any due process rights of the abutters under either the United States or the Massachusetts Constitutions. On remand, the abutters may introduce additional evidence, if any, relevant to this claim. The order dismissing count eight of the second amended complaint is vacated. .

(e) The abutters challenge the award of costs to Southwestern Bell and to the planning board. General Laws c. 40A, § 17, provides that an award of costs "shall not be allowed against the party appealing from the decision" of a planning board "unless it shall appear to the court" that the "appellants acted in bad faith or with malice in making the appeal to the court." The judge made no findings to that effect, and we see nothing in the record to suggest as much. In light of our disposition of this appeal, the award of costs is vacated.

The judgment of the Superior Court is affirmed in part and vacated in part. The case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*