Donohue, J.
Plaintiffs Steven and Debra Scheibel, Frank Pusateri and Patricia Lovett commenced this action pursuant to G.L.c. 40A, §17 challenging the grant of a special permit to defendant B.A. Sundin & Sons, Inc. (“Sundin”) by the Holden Planning Board (“the Board”) for the construction of a retirement community. Plaintiffs allege that the special permit approved by the Board fails to comply with Holden’s Retirement Community By-Law and is thus, legally untenable and unreasonable. After a trial, without a jury, and based upon all the credible evidence, the court makes the following findings of fact and rulings of law.
FINDINGS OF FACT
Plaintiffs live on Salisbury Street in Holden, Massachusetts. Sundin owns a strip of land lying between plaintiffs’ properties which constitutes 80 to 100 feet of frontage on Salisbury Street and ultimately expands to the rear encompassing approximately 42 acres. The property also abuts Otter Brook Drive, a public way in Holden.
In December 1999, Sundin applied for a special permit pursuant to Holden’s Retirement Community By-Law. Sundin sought to construct a retirement community on his property consisting of 99 independent living retirement housing units serviced by a private roadway network. The community also included a common area, walking trails and a “clubhouse” building. In order to reside in the community, at least one member of the household must be over 55 years of age.
A variety of floor plans detailing the interior of the proposed living units were developed by Sundin’s architect. Each floor plan shows that all of the units consist of more than one level. Some units have the main living space on the second level, some units have bedrooms and loft space on that level while others have only loft space on the second level. The only access to the second level depicted in the plans is from a set of stairs.
Sundin also submitted plans detailing building and street locations for the community. The plans reflect a 50 foot buffer zone around the perimeter of the property.
The principal entranceway to the community, as shown on the plans, is from a private 56 foot wide roadway located between plaintiffs’ properties. The roadway is 22 feet wide on either side with a 12 foot wide barrier down the center. It runs from Salisbury Street through the property for some distance until it reaches the beginning of the community. This entranceway cuts through the 50 foot buffer zone. The beginning of the entranceway as it borders on Salisbury Street is approximately 10 to 12 feet from the edge of plaintiffs’ properties.
The plans also depict that a secondary access to the community is provided from Otter Brook Drive. This access is a limited gated access to be used only by the residents of the community and is not open to through traffic. The Otter Brook Drive entrance also cuts through the 50 foot buffer zone.
The proposed “clubhouse” building on the property is intended to function as a meeting and/or gathering space for residents and may also house offices for maintenance personnel. It does not contain any amenities for active recreation nor does it contain any residential units.
As to the roadways and drives within the community, Sundin requested a waiver to reduce the paved roadway width from the required 28 feet to 22 feet. He also requested waivers from installing sidewalks adjacent to the roadways and from the centerline radius requirement.
Traffic studies were performed on the entrance to the property and its effect on Salisbury Street. The Holden Police reviewed accident and traffic data for Salisbury Street from 1997 to 1999 and concluded that the proposed addition of the retirement community would not adversely effect traffic volume or accident rates. In addition, site distance analyses were performed on the proposed drive location on Salisbury Street. The analyses indicate that adequate stopping sight distances exist.
Public hearings were held by the Board on Sundin’s application on January 18, February 15 and March 14, 2000. At these meetings, plaintiffs voiced their concerns and objections to the proposed project. In making its final decision, besides the testimony at the hearings, the Board received a letter of support for the proposed community from the Economic Development Commission, a memorandum from the Holden Fire *564 Chief stating that the proposed 22 foot roadway width was acceptable, a memorandum from the Holden Police Chief indicating that the proposed community would not adversely effect traffic volume or accident rates and a letter from the Engineering Division of the Town stating that adequate stopping sight distances existed in both directions from the entranceway on Salisbury Street.
On March 14, 2000, the Board voted to grant the special permit. The Board’s Notice of Decision was filed on March 22, 2000. In its notice, the Board found that the plans submitted for the proposed community met the requirements of the regulations and thereafter approved the development of the property subject to the plans with seventeen modifications and conditions specifically listed in the notice. Within the listed modifications and conditions, the Board granted the waivers sought by Sundin with specific requirements.
RULINGS OF LAW
Pursuant to G.L.c. 40A, §17, “(t]he court shall hear all evidence pertinent to the authority of such board or special permit granting authority and determine the facts, and upon the facts as so determined, annul such decision if found to exceed the authority of such board or special permit granting authority or make such other decree as justice and equity may require.”
“In a word, the matter is heard de novo and the judge makes his own findings of fact, independent of any findings of the board . . .’’ Bicknell Realty Co. v. Board of Appeal of Boston, 330 Mass. 676, 679 (1953). The judge is not confined to hearing only the evidence before the board. Id. Such review “confines the function of the court to its usual and proper function of applying established law to established facts.” Pendergrast v. Board of Appeals of Barnstable, 331 Mass. 555, 559 (1954). “The decision of the board is no more than the report of the administrative body and on appeal has no evidentiary weight.” Devine v. Zoning Bd. of Appeals of Lynn, 332 Mass. 319, 321 (1955). “(T]he judge . . . is to . . . determine the legal validity of the decision of the board upon the facts found by him . . .” Lawrence v. Board of Appeals of Lynn, 336 Mass. 87, 89 (1957).
“Judicial review is nevertheless circumscribed: the decision of a board cannot be disturbed unless it is based on a legally untenable ground or is unreasonable, whimsical, capricious or arbitrary.” Roberts v. Southwestern Bell Mobile Systems, Inc., 429 Mass. 478, 486 (1999) (quotation omitted).
Plaintiffs allege that the special permit approved by the Board fails to comply with Holden’s Retirement Community By-Law and is thus, legally untenable and unreasonable. Specifically, plaintiffs contend that the community does not comply with the By-Law in that (1) the required 50 foot buffer zone around the community does not exist; (2) the floor plans of the dwelling units are not “barrier free"; and (3) the “clubhouse” building is not permitted. Plaintiffs also contend that the Board failed to make detailed findings in its Notice of Decision as required by the By-Law and G.L.c. 40A. The court will address each issue in turn.
1. Buffer Zone
Section 4(B) of the By-Law provides in pertinent part that
[sJingle family detached dwelling units, duplexes, and triplexes, townhouses, multifamily residential dwelling units . . . are to be set back a minimum of 50 feet from the outside perimeter property line of the retirement community. This 50 foot setback is intended to act as a buffer and shall not be disturbed from its natural state for the entire distance excepting . . . the entranceway(s).
Plaintiffs argue that §4(B) does not permit the buffer area adjacent to Salisbury Street to be bisected by the 56 foot wide double barrel roadway. Plaintiffs contend that the exception for entranceways is meant only to create passages through the 50 foot buffer for access to the property and Sundin cannot make use of this exception by declaring the long roadway between their properties an “entranceway.’’
The court disagrees with plaintiffs’ assertion and finds that the roadway extending from Salisbury Street through the property until it eventually reaches the beginning of the development is the “entranceway” to the community. Thus, under the By-Law, this entranceway is a valid exception to the required 50 foot setback.
2. Barrier Free
Section 3 of the By-Law provides in pertinent part that
[a]s used in this Bylaw, Independent Living Retirement Housing means private residential units, individually equipped with a minimum of a kitchen, bedroom, bathroom and living area. Geared toward independently functioning adults, this housing typically does not offer on-site supportive services but is designed to be barrier free . . .
Plaintiffs contend that the floor plans of the dwelling units are not “barrier free" as required by the By-Law.
There is no definition of the term “barrier free” in the By-Law. Neither party presented compelling evidence as to a concrete definition of the term. There was testimony indicating that “barrier free” typically means handicap accessible. However, the court does not find this an appropriate definition in the context of the proposed retirement community.
The residential units in the proposed community are considered Independent Living Retirement Housing and are geared toward independently functioning adults. Thus, in this context, “barrier free” does not necessarily mean handicap accessible as not all independently functioning adults require handicap access.
*565 Despite the lack of a clear definition of “barrier free,” the court finds that the proposed dwelling units comply with Section 3 of the By-Law. The major living space in all of the units is located on one level and the second level is accessible by a set of stairs. Thus, in the context of independently functioning adults, the court considers the units to be “barrier free.”
3. Clubhouse
Section 3 of the By-Law also defines the types of dwellings and facilities permitted in retirement communities. Among those listed are Independent Living Retirement Housing, Congregate Housing, Assisted Living Facilities, Restorative Care/Skilled Nursing Facilities and Dwelling Units. Plaintiffs argue that since a “clubhouse” is not among the types of facilities listed, it is not permitted under the By-Law. The court disagrees.
Although Section 3 does not specifically list a “clubhouse” building, a reading of this Section indicates that it is mainly concerned with residential buildings within the community. It does not address accessory buildings such as a “clubhouse.” Since the “clubhouse” does not contain any residential units, Section 3 of the By-Law is not instructive. Plaintiffs offer no evidence that the “clubhouse” violates any other Section of the Retirement Community By-Law or does not adhere to the Town’s Zoning By-Law. Therefore, the court finds that the clubhouse is a permitted structure within the community.
4. The Board’s Notice of Decision
Lastly, plaintiffs argue that the Board’s Notice of Decision failed to incorporate detailed findings of fact required by Section 8 of the By-Law and G.L.c. 40A, §9. The court disagrees.
In its March 22, 2000 Notice of Decision, the Board found that “the plans submitted [for the proposed community met] the requirements of the regulations” and thereafter approved the development of the property subject to the plans with seventeen modifications and conditions. The court finds that these specific conditions and modifications, ”[b]y their nature, do double duty as findings.. .’’as required by the By-Law and G.L.c. 40A, §9. Tebo v. Board of Appeals of Shrewsbury, 22 Mass.App.Ct. 618, 621 (1986).
CONCLUSION
Accordingly, for the above reasons, the court finds that the decision by the Holden Planning Board granting a special permit to B.A. Sundín & Sons, Inc. for the construction of a retirement community is based on a legally tenable ground and is not unreasonable, whimsical, capricious or arbitrary.
ORDER
It is therefore ORDERED that judgment enter AFFIRMING the decision of the Holden Planning Board.