COMMONWEALTH *vs.* A. GRAZIANO, INC.

No. 91-P-1050.

Norfolk. January 20, 1993. - July 30, 1993.

Present: KASS, SMITH, & PORADA, JJ.

*Municipal Corporations*, By-laws and ordinances, Building inspector. *Zoning*, Exhaustion of administrative remedies, Enforcement, Person aggrieved, Building inspector, By-law. *Administrative Law*, Exhaustion of remedies. *Practice, Criminal*, Amendment of indictment or complaint.

A town, acting through its zoning enforcement officer, was not required to exhaust any administrative remedy before commencing a criminal prosecution for violation of its zoning by-law. [71-73]
A District Court judge properly allowed the Commonwealth's motion to amend a criminal complaint charging violation of a town's zoning by-law, where the amendment was merely one of form and occasioned no prejudice to the defendant. [73-74]
At the trial of a criminal complaint charging violation of a town's zoning by-law, the jury's verdict of guilty was warranted by evidence properly before them. [74-75]

COMPLAINT received and sworn to in the Quincy Division of the District Court Department on August 22, 1988.

On transfer to the jury session of that division, a pretrial motion to amend the complaint was heard by *Anthony N. Compagnone*, J., and the case was tried before *Robert V. Greco*, J.

*James M. Burke* for the defendant.
*John A. Leslie* for the Commonwealth.

KASS, J. Braintree's zoning by-law imposes a fine of not less than fifty dollars nor more than one hundred dollars for violations of its provisions. Each day of wilful violation constitutes a separate offense. Braintree zoning by-law § 135-

204 (1978).[1] Upon a complaint applied for by the building inspector of Braintree (the building inspector), A. Graziano, Inc. (Graziano), stood trial in the District Court for building a silo for the storage of cement in violation of the zoning by-law. A judge of the District Court found forty-four days of wilful violation and assessed a fine of $2,200.

From that judgment Graziano has appealed, raising as a principal contention that the building inspector was bound to exhaust administrative remedies under G. L. c. 40A before initiating a criminal proceeding. We conclude that a municipality, through its zoning enforcement officer, may prosecute as a crime a violation of its zoning laws (assuming its zoning by-law makes provision therefor) without prior exhaustion of administrative remedies and, accordingly, we affirm the judgment.

Graziano has been operating a cement manufacturing business on Adams Street in Braintree since 1946. In 1974, Braintree reclassified the zoning district in which Graziano was located from an industrial district to a business district,[2] in which manufacturing was not permitted as of right. The Graziano business thereupon became a nonconforming use. See *Mendes* v. *Board of Appeals of Barnstable*, 28 Mass. App. Ct. 527, 528-530 (1990).

In August, 1985, Graziano erected the silo — his third on the locus — which sparked this controversy. Graziano did not deign to apply for a building permit on the ground that the silo was a mere piece of equipment, not requiring a building permit. From October, 1986, to February 11, 1988, there ensued a running correspondence between the building inspector and Graziano, or Graziano's lawyer, in which the

---

[1] The source of power for imposing such a fine and for making each day of violation a separate offense is G. L. c. 40A, § 7. See *Commonwealth* v. *Porrazzo*, 25 Mass. App. Ct. 169, 169-173 (1987). See also G. L. c. 40, § 21; *Commonwealth* v. *Sostilio*, 351 Mass. 419, 421-422 (1966).

[2] Although certifications by the town clerk which appear in the record appendix place the locus in what the clerk calls the "Business District," § 135-301 of the zoning by-law establishes a "general business district" and a "Highway Business District." The evidence at trial was that the locus was in the general business district, in which an industrial use of the sort carried on by Graziano was not permitted.

building inspector pressed that a building permit be applied for, or the silo be removed, and warned that the town would take legal action if Graziano did not remove the silo or legitimize it. In his February 11, 1988, communication, the building inspector added that the third silo was an unlawful expansion of Graziano's nonconforming use. Nothing happened for several months until on June 3, 1988, Graziano lodged an appeal with the zoning board of appeals of Braintree (board) from what reasonably could be construed as an order of the building inspector.[3] The town made its application for a criminal complaint one week later.

1. *Exhaustion of administrative remedies.* To sustain its argument that the building inspector was bound to follow an administrative path to the board before initiating a proceeding leading to the imposition of a fine, Graziano points to G. L. c. 40A, § 7, as appearing in St. 1975, c. 808, § 3, which, so far as pertinent, provides:

> "No action, suit or proceeding shall be maintained in any court, nor any administrative or other action taken to recover a fine or damages or to compel the removal, alteration, or relocation of any structure or part of a structure or alteration of a structure by reason of any violation of any zoning by-law or ordinance except in accordance with the provisions of this section, section eight and section seventeen. . . ."

Indeed, in decisions beginning with *Neuhaus* v. *Building Inspector of Marlborough,* 11 Mass. App. Ct. 230, 232-235 (1981), and followed by *Woburn* v. *McNutt Bros. Equip. Corp.,* 16 Mass. App. Ct. 236, 238 (1983), *Selectmen of Tewksbury* v. *Granfield,* 17 Mass. App. Ct. 1011 (1984), and *Clark & Clark Hotel Corp.* v. *Building Inspector of*

---

[3]The board denied Graziano's petition, i.e., it agreed with the building inspector that the silo was a structure and not some piece of equipment, like a tractor. Graziano brought an action for judicial review of the board's decision. According to the town, and Graziano does not say otherwise in its reply brief, the action in the Superior Court ended with an award of summary judgment in the town's favor.

*Falmouth*, 20 Mass. App. Ct. 206 (1985), we have emphasized that persons *aggrieved* by an order or failure to act of a zoning enforcement officer are to exhaust administrative remedies with the local permit granting authority,[4] before seeking judicial intervention. We have emphasized the word "aggrieved" in the preceding sentence because the statutory scheme — by which we mean G. L. c. 40A, §§ 8 & 17, read together, and also in combination with, G. L. c. 40A, § 7, and G. L. c. 40, § 21 — presupposes initiation of administrative proceedings by a *person aggrieved*.

That is not the status of an enforcement official, such as the building inspector in this case. The building inspector has not been aggrieved by any public action which he might appeal to the board of appeal. It is not in the nature of his work which, one might say, is to give grief, not suffer it. Suppose that a landowner doggedly declines to comply with an order of a building inspector, as was the case with Graziano,[5] there is no basis in G. L. c. 40A, § 8, as appearing in St. 1975, c. 808, § 3, for that building inspector to appeal to the board of appeal because he or she is neither a "person aggrieved by reason of his inability to obtain a permit or enforcement action from any administrative officer" nor a person "aggrieved by an order or decision of the inspector of buildings, or other administrative official." Thus blocked at an administrative level, it follows that a building inspector may apply for a complaint in a court if meaning is to be

---

[4]"Permit granting authority" is a defined term under The Zoning Act and means the local board of appeals or zoning administrator, the latter being a person designated by such a board to perform certain of its functions. G. L. c. 40A, § 1A.

[5]In its brief and reply brief, Graziano protests that, until the building inspector's letter of February 11, 1988, the building inspector had not charged Graziano with a violation of the zoning by-law; that earlier communications merely objected to the erection of the silos without a building permit, thus suggesting a violation of the building code, rather than the zoning code. For purposes of deciding whether the town could bring a criminal proceeding and whether a court could entertain such a proceeding, the nature of the correspondence prior to February 11, 1988, is not material; nor is it material whether Graziano had or had not acted contumaciously regarding the building inspector's instructions.

given to a municipality's authority to enforce its zoning laws through proceedings which are criminal in nature. Cf. *Commonwealth* v. *Porrazzo*, 25 Mass. App. Ct. at 172-173. See Randall & Franklin, Municipal Law & Practice § 627 (4th ed. 1993).

The municipal power to prosecute zoning violations is not suspended by pending administrative proceedings before the permit granting authority for the reasons that: first, the statutory scheme contains no provision establishing an automatic stay of prosecutions, and, second, a building inspector would not necessarily know whether a proceeding had been lodged with the board touching on the code violation that the building inspector has acted to punish. It remains open to a landowner who has brought an administrative proceeding before a permit granting authority for determination of a question under a local zoning by-law to move to stay proceedings on a criminal complaint arising out of the same facts as are involved in the administrative proceeding. If there is a genuine parallelism between the administrative and judicial proceedings and the former were not launched transparently for the purpose of delay, a judge should be generously disposed to allow the motion for a stay, because there would pertain the same policy considerations, adverted to in *Neuhaus* v. *Building Inspector of Marlborough*, 11 Mass. App. Ct. at 232-236, and its progeny, which favor administrative decision of local zoning questions before recourse to judicial determination.

2. *Amendment of criminal complaint.* As originally issued on August 22, 1988, the complaint charged a failure to obtain a building permit conformable with zoning regulations, in violation of § 135-302 of the Braintree zoning by-law.[6] Nearly eight months later, on April 11, 1989, the Commonwealth moved to amend the complaint to state that

---

[6]We intentionally omit reference to the other violation charged, that of § 135-402, because that is the count as to which a verdict was directed for the defendant. The District Court judge who allowed the motion to amend inverted the section numbers of the zoning by-law, so that they did not match the nature of the offense described. Neither party has mentioned this and, it is apparent, neither party was misled by that clerical mistake.

the violation continued from February 25, 1988, the date the last grace period given by the building inspector expired, to June 10, 1988, the date the complaint was applied for. The motion to amend was allowed May 3, 1989, a substantial time before trial began on March 20, 1990.

Since the silo was in place and not removed, a continuing offense was implicit in the original complaint. The amendment, thus, was one of form and, as such, permissible under Mass.R.Crim.P. 4(d), 378 Mass. 849 (1979). The insertion of correct dates has generally been regarded as matter of form. See *Commonwealth* v. *Wright*, 411 Mass. 678, 683 (1992); Smith, Criminal Practice & Procedure § 741 (2d ed. 1983). In its practical effect the amendment was one of form and not of substance. *Commonwealth* v. *Kapsalis*, 26 Mass. App. Ct. 448, 454 (1988). Certainly, in view of the long time between the amendment to the complaint and the trial, there was no prejudice to the defendant as a result of the amendment.

3. *Required finding of not guilty.* As § 135-302 of the Braintree by-law was the municipal law offended against, the Commonwealth was bound to prove that a "structure" had been "used," "erected," or "placed" in a manner which failed to conform to the town's zoning regulations. As to the silo having been erected or placed, there was no dispute. It was there. At trial, the battle, for reasons less than obvious, was fought about whether the silos were in fact being used. As to this, there was evidence of increased vehicular activity and storage of materials after the third silo had been put in place which permitted the inference that something was going on in that silo. See *Commonwealth* v. *Pope*, 406 Mass. 581, 584 (1990). The judge's estimate of the days of violation, considering that the third silo had been in place more than forty-four days, was more generous to Graziano than it deserved. The motion for a required finding of not guilty was rightly denied.

4. *Other matters.* We have considered the issues raised by Graziano in connection with a motion to suppress certain evidence and with authentication of the zoning by-law and

think neither has any merit. It was not necessary to conduct a warrantless search of Graziano's premises to notice the third silo. Nothing in *Commonwealth* v. *John G. Grant & Sons*, 403 Mass. 151, 160-161 (1988), is to the contrary. Moreover there was evidence warranting a finding that representatives of Graziano gave permission to town officers to come on the locus. *Commonwealtlh* v. *Beldotti*, 409 Mass. 553, 556 (1991). The certification of the town clerk dated March 19, 1990, adequately authenticated that the by-law provisions received in evidence were applicable at the times material. We are not pointed by Graziano to any place in the record where the existence in the by-law of § 135-204, or its applicability, was made a matter of contention.

*Judgment affirmed.*