48 Mass. App. Ct. 709 (2000) 709

Building Commissioner of Franklin v. Dispatch Communications of New England, Inc.

BUILDING COMMISSIONER OF FRANKLIN *vs*. DISPATCH COMMUNICATIONS OF NEW ENGLAND, INC.
(and three companion cases[1]).

Nos. 98-P-0309, 98-P-0310, & 98-P-0375.

Norfolk. December 3, 1998. - March 9, 2000.

Present: LAURENCE, LENK, & BECK, JJ.

*Zoning*, By-law, Public utilities, Height restriction, Communications tower, Building permit, Board of appeals: decision. *Telecommunications*, Wireless service facility. *Practice, Civil*, Summary judgment, Relief from judgment, Report. *Constitutional Law*, Public utilities, Equal protection of laws. *Federal Telecommunications Act. Words*, "Monopoly."

A Superior Court judge correctly concluded that a commercial mobile radio services corporation was not a utility exempt from provisions of the zoning by-law applicable to the construction of a telecommunications tower. [714-716]

A Superior Court judge did not err in concluding that a town's actions seeking to remove a telecommunications tower erected in a residential neighborhood did not violate the provisions of the Federal Telecommunications Act, 47 U.S.C. § 332(c)(7)(B)(i)(I) & (II), or violate the equal protection rights of the owner of the tower. [718-722]

A Superior Court judge properly denied a party's motion for relief from judgment, where the judgment had been stayed pending appeal. [722-723]

CIVIL ACTIONS commenced in the Superior Court Department on December 30, 1996, and January 10, 1997, respectively, and in the Land Court Department on January 6, 1997.

After the cases were consolidated in the Superior Court Department, motions for summary judgment were heard by *Paul A. Chernoff*, J.; entry of separate and final judgment was

---

[1]Dispatch Communications of New England, Inc. *vs*. Building Commissioner of Franklin and Zoning Board of Appeals of Franklin; Dispatch Communications of New England, Inc. *vs*. Zoning Board of Appeals of Franklin; and Commonwealth *vs*. Brian McAuley (McAuley is the president of Dispatch Communications of New England, Inc.).

ordered by *Mitchell J. Sikora, Jr.*, J.; and a motion for relief from judgment was heard by *Nonnie S. Burnes*, J.

COMPLAINT received and sworn to in the Wrentham Division of the District Court Department on February 12, 1997.

Questions of law were reported by *Daniel B. Winslow*, J.

*Mark W. Corner* for Dispatch Communications of New England, Inc.

*Mark A. Berthiaume* for building commissioner of Franklin & another.

BECK, J. Between October, 1995, and May, 1996, Dispatch Communications of New England, Inc., doing business as Nextel Communications, Inc. (Nextel), constructed a telecommunications tower on privately owned property in a rural residential district in the town of Franklin. The four cases consolidated in this appeal are the result of the town's efforts to have the tower removed.

*Procedural and factual background.* We take the facts from the findings of the Superior Court judge and the undisputed summary judgment materials before him, as well as from the stipulated facts in the District Court criminal case. In October, 1995, Nextel applied to the Franklin building commissioner, Allan B. Fraser, for a building permit to construct a communications tower on privately owned property located at 765 Lincoln Street, in a rural residential I (RRI) zoning district. Two weeks later, the commissioner issued the permit. The Lincoln Street tower, which is 120 feet high, was completed in May, 1996. Fraser had issued a similar permit to Nextel a year before. Pursuant to that permit, Nextel had constructed a 100 foot tower in the Forge Hill Road area, an industrial zoning district where two other mobile service providers, Cellular One and Bell Atlantic/Nynex Mobile, also have communication towers.

Nextel is a multi-billion dollar corporation in the commercial mobile radio services industry. See 47 U.S.C. § 332(c)(7)(C)(i); *Sprint Spectrum, L.P.* v. *Willoth*, 176 F.3d 630, 641-642 (2d Cir. 1999). Its services include digital cellular telephone service, text and numeric paging, voice mail, and other features. "Digital . . . technology provide[s] numerous advantages to consumers: 'better quality, fewer dropped calls and better security than [analog] cellular phones.' " Note, Wireless Service Providers v. Zoning Commissions: Preservation of State and Local Zoning Authority Under the Telecommunications Act of 1996, 32 Ga.

L. Rev. 965, 980 (1998). For a more detailed discussion of the industry and the technology, see *Roberts* v. *Southwestern Bell Mobile Sys., Inc.*, 429 Mass. 478, 479-480 (1999). See also *Sprint Spectrum, L.P.* v. *Willoth, supra* at 634-635.; *Sprint Spectrum L.P.* v. *Jefferson County*, 968 F. Supp. 1457, 1460 (N.D. Ala. 1997). See generally Note, Wading Through the Rhetoric of the Telecommunications Act of 1996: Uncertainty of Local Zoning Authority Over Wireless Telecommunications Tower Siting, 22 Vt. L. Rev. 461, 467-472 (1997).

On August 14, 1996, three months after the Lincoln Street tower was completed, the building commissioner sent Nextel a letter ordering it to remove both towers by September 15, 1996. He took this ·action at the behest of the Franklin town council, the town's legislative body. In the letter, the building commissioner claimed that the towers violated the height and use restrictions in the Franklin zoning by-law. The letter also mentioned an unrelated proceeding involving Nextel at the Department of Public Utilities (now the Department of Telecommunications and Energy, see St. 1997, c. 164, § 28), which we shall discuss further in due course.

In mid-September, 1996, Nextel appealed ·the building commissioner's ·removal order to Franklin's zoning board of appeals (board). See G. L. c. 40A, §§ 8 & 15. Nextel argued that its towers complied in all respects with the Franklin zoning by-law and that the removal order violated section 704 of the Federal Telecommunications Act of 1996, which the President had signed into law on February 8, 1996. Pub. L. No. 104-104, 110 Stat. 56 (codified at 47 U.S.C. §§ 151 et seq., as amended). The board held a public hearing on October 31 and November 14, 1996, and, on December 12, 1996, issued its findings and decision sustaining the building commissioner's order to remove the towers.

The parties then proceeded to the courts of the Commonwealth. On December 30, 1996, the building commissioner filed suit in Superior Court pursuant to G. L. c. 40A, § 7, third par., seeking a declaratory judgment and injunctive relief to compel compliance with his removal order. One week later, on January 6, 1997, Nextel countered by filing an appeal from the decision of the board in the Land Court. Four days after that, on January 10, 1997, Nextel filed its own action in Superior Court for declaratory and injunctive relief under the Federal Telecommunications Act. In February, 1997, pursuant to a December 18,

1996, application of the building commissioner under § 185-44(H)(1) of the Franklin zoning by-law, the Wrentham District Court issued two criminal complaints against Nextel for continuing violations of the by-law. In April, 1997, the Land Court case was consolidated in Superior Court with the two Superior Court cases.

In July, 1997, the town moved for summary judgment in each of the consolidated civil cases. On September 19, 1997, after hearing, a Superior Court judge denied the town's motions for summary judgment as to the Forge Hill Road tower and granted the motion as to the Lincoln Street tower. However, noting that "Nextel has argued that it must have both communication towers in order to provide full service to its clientele . . . [and] [a]ssuming, but not deciding, that removal of one tower would seriously impede Nextel's operation," the judge stayed his order to remove the Lincoln Street tower for four months, to give Nextel time to explore alternative sites for its tower. Final judgments in the consolidated civil cases entered on December 26, 1997, and January 5, 1998, more than three months later. Later in January, 1998, a different judge of the Superior Court stayed the order requiring removal of the Lincoln Street tower pending appeal, and subsequently denied a rule 60(b) motion for relief from judgment. See Mass.R.Civ.P. 60(b), 365 Mass. 828-829 (1974). Meanwhile, on December 12, 1997, pursuant to an agreed statement of facts, the criminal case in the Wrentham District Court was reported to this court on questions of law. See G. L. c. 218, § 27A(*d*); Mass.R.Crim.P. 34, 378 Mass. 905-906 (1979); Mass.R.A.P. 5, as amended, 378 Mass. 930 (1979). Nextel appeals from the judgments in favor of the town concerning the Lincoln Street tower and from the denial of its motions for relief under rule 60(b). Nextel is also the appellant in the criminal case that has been consolidated with the civil cases now before us. See Mass.R.A.P. 5.

*Discussion.* The core issues in this appeal concern interpretations of the Franklin zoning by-law. Stripped to its essentials, Nextel's argument is that the Lincoln Street tower complies with the by-law and that the town's claim to the contrary would lead to a result which violates the Federal Telecommunications Act. Specifically, Nextel claims that it is a public utility under § 185-3 of the Franklin zoning by-law and may therefore construct its tower in a residential district as a matter of right. It also claims that the tower comes within the height exemption of

the by-law, § 185-13. According to Nextel, the removal order constitutes unreasonable discrimination under the Federal Telecommunications Act, violates the equal protection guarantees of the Federal and Massachusetts Constitutions, and in effect prohibits the provision of personal wireless services in violation of the Federal Telecommunications Act. On the other hand, the town argues that Nextel is not a public utility because it is not a monopoly and that it is not in compliance with the height requirements in an RRI district. The town denies its action either discriminates against Nextel or prohibits the provision of personal wireless services.

According to Nextel, the dispute about the meaning of Franklin's zoning by-law as applied to the Lincoln Street communications tower "gives rise to a genuine issue of material fact." However, the meaning of a phrase in a zoning by-law is a question of law, not a question of fact. See *Kurz* v. *Board of Appeals of N. Reading*, 341 Mass. 110, 112 (1960). See also *Sprint Spectrum L.P.* v. *Easton,* 982 F. Supp. 47, 50 & n.1 (D. Mass. 1997) (Differences in opinion as to the inferences to be drawn in determining proper interpretation of by-law is an "interpretation of the legal standards involved and not the material facts").

1. *Applicable legal standards.* A zoning board of appeals is entitled to "all rational presumptions in favor of its interpretation of its own by-law, [provided] there [is] a rational relation between its decision and the purpose of the regulations it is charged with enforcing." *Fafard* v. *Conservation Commn. of Reading*, 41 Mass. App. Ct. 565, 572 (1996). Such a board has "the power to deny [a] permit as long as its decision [is] not 'based on a legally untenable ground, or . . . [is not] unreasonable, whimsical, capricious or arbitrary.' " *Golden* v. *Board of Selectmen of Falmouth*, 358 Mass. 519, 523 (1970), quoting from *MacGibbon* v. *Board of Appeals of Duxbury*, 356 Mass. 635, 639 (1970). See *Livoli* v. *Zoning Bd. of Appeals of Southborough*, 42 Mass. App. Ct. 921, 923 (1997) ("A reasonable interpretation of its own zoning by-law by a local board, such as a board of appeals, is entitled to deference").

Summary judgment is appropriate if the pleadings and other relevant and appropriate materials "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Mass.R.Civ.P. 56(c), 365 Mass. 824 (1974). "We have held firmly to the principle that well pleaded cases and motions for summary

judgment supported by affidavits and other materials serve a 'salutary purpose' which should not be 'set at naught' where the opposing party merely raises 'vague and general allegations of expected proof.' " *Community Natl. Bank* v. *Dawes*, 369 Mass. 550, 555-556 (1976), quoting from *Albre Marble & Tile Co.* v. *John Bowen Co.*, 338 Mass. 394, 397 (1959). The issues here are appropriate for resolution on summary judgment. Indeed, many of the telecommunications cases we have reviewed were decided on motions for summary judgment. See, e.g., *Amherst* v. *Omnipoint Communications Enterprises, Inc.*, 173 F.3d 9, 10 (1st Cir. 1999); *Sprint Spectrum, L.P.* v. *Willoth*, 176 F.3d at 634.

2. *The Franklin zoning by-law.* Under Franklin's use regulations schedule, part III, 3.6, a public utility use is permitted as of right in all zoning districts of the town. The definition section of the by-law, § 185-3 of article I of chapter 185, defines a public utility as:

"A public service corporation, either private or municipal, supplying or transmitting gas, water, electricity or communications to any or all members of the public and subject to federal, state or town regulations by virtue of its natural or legal monopoly."

The board found that whether or not Nextel qualifies as a "public service corporation," an issue the parties dispute, it is not a public utility under the town's zoning by-law because it "is not regulated by virtue of its natural or legal monopoly." The Superior Court judge agreed, concluding that "Nextel cannot have a natural or legal monopoly in the CMRS [commercial mobile radio services] industry in Franklin because Cellular One and Bell Atlantic/Nynex Mobile also provide the same services in that town."

Nextel claims that the "definition of 'public utility' contained in the [b]y-law does not require [it] to be regulated because it *is* a monopoly. Rather [according to Nextel], consistent with the plain language of the definition contained in the [b]y-law, Nextel is plainly subject to regulation '*by virtue of* its natural or legal monopoly,' . . . because it operates over an exclusive spectrum under a federally regulated licensing scheme." Nextel's claim to be a "legal monopoly" in the sense of having received from the sovereign an exclusive right to use its narrow

radio spectrum, see *Commonwealth* v. *Dyer*, 243 Mass. 472, 486 (1922), cert. denied, 262 U.S. 751 (1923), as well as a "natural monopoly," in the sense of being the sole provider of mobile radio communications within that narrow band, may be literally correct. However, the board's construction of the word "monopoly" reflects economic and market realities our courts have long recognized. The term "monopoly" has been defined under Massachusetts law as "a combination, organization or entity so extensive and unified that its tendency is to suppress competition, to acquire a dominance in the market and to secure the power to control prices to the public harm with respect to any commodity which people are under a practical compulsion to buy." *Commonwealth* v. *McHugh*, 326 Mass. 249, 261 (1950), quoting from *Commonwealth* v. *Dyer*, 243 Mass. at 486. See *United States* v. *E.I. Du Pont de Nemours & Co.*, 351 U.S. 377, 380-381, 391 (1956); *United States Steel Corp.* v. *Fortner Enterprises, Inc.*, 429 U.S. 610, 620 (1977).

With at least two direct competitors within the town of Franklin, Nextel is not in a position to suppress competition or control prices. As Nextel's director of technical services acknowledged, "CMRS providers compete against one another for end use customers." Indeed Nextel's brief itself states that "[i]n fact . . . no CMRS provider is an actual monopoly." See *Roberts* v. *Southwestern Bell Mobile Sys., Inc.*, 429 Mass. at 479 (Federal Telecommunications Act "opened markets to multiple providers employing various service delivery technologies"). There was no error on this point. Compare *Omnipoint Communications, Inc.* v. *Scranton*, 36 F. Supp. 2d 222, 234 (M.D. Pa. 1999) (cellular service providers not public utilities); *Crown Communications* v. *Zoning Hearing Bd. of Glenfield*, 550 Pa. 266, 273-275 (1997) (private, nonregulated business not public utility, therefore not entitled to variance).

The building commissioner's original conclusion that the tower did fall under the definition of public utility does not preclude the board's later enforcement of a contrary position. It is well established that a municipality is not estopped by the acts of its officers, including its building inspectors, from enforcing its zoning by-law. See *Cape Resort Hotels, Inc.* v. *Alcoholic Lic. Bd. of Falmouth*, 385 Mass. 205, 224 (1982), and cases cited, *S.C.*, 388 Mass. 1013 (1983). "The right of the public to have the zoning by-law properly enforced cannot be forfeited by the action of [a municipality's] officers." *Building Inspector*

*of Lancaster* v. *Sanderson*, 372 Mass. 157, 162 (1977), quoting from *Cullen* v. *Building Inspector of N. Attleborough*, 353 Mass. 671, 675 (1968). Nor can a permit legalize a structure or use that violates the zoning by-law. See *Building Commr. of Medford* v. *C & H Co.*, 319 Mass. 273, 286 (1946). See generally cases collected in Annot., Right of Municipality or Other Public Authority to Enforce Zoning or Fire Limit Regulations as Affected by its Previous Conduct in Permitting or Encouraging Violation Thereof, 119 A.L.R. 1509 (1939).

In setting forth his analysis of Nextel's claim under Franklin's zoning by-law, the Superior Court judge concluded that "[b]ecause Nextel is not a public utility company within § 185-3 of . . . Franklin's zoning by-laws, it is subject to the by-laws." Nextel complains that the motion judge then proceeded directly to an analysis of Nextel's claims under the Federal Telecommunications Act, "[without] *any* analysis of whether the Lincoln Street [t]ower met the use and dimensional requirements of the [b]y-law." We think the motion judge's decision about the applicability of the zoning by-law is an implicit finding that the Lincoln Street tower is not a permitted use. See *Cady* v. *Plymouth-Carver Regional Sch. Dist.*, 17 Mass. App. Ct. 211, 212-213 (1983) (court may surmise basis for summary judgment even though the judge did not state his reasons).

If the tower is not a permitted use in the RRI district, there is no need to reach the height issue. However, since both parties argued the height issue before the board and briefed and argued the issue on appeal, we comment on Nextel's argument on this point.

The Lincoln Street tower is located in an RRI district. It is 120 feet high. The height limitation for buildings in that district is thirty-five feet. The limitation for structures is twenty feet. (The by-law defines a structure as "[a]nything constructed or erected at a fixed location on the ground to give support, provide shelter or satisfy other purposes." A building is defined as an "independent structure having a roof supported by columns or walls, resting on its own foundations and designed for the shelter, housing or enclosure of persons, animals, chattel or property of any kind.")

Section 185-13 of the zoning by-law is a general provision which sets out the exceptions to the by-law's height limitations. It provides:

"The limitation on height of buildings and structures in

the Schedule of Lot, Area, Frontage, Yard and Height Requirements shall not apply in any district to chimneys, ventilators, towers, spires or other ornamental features of buildings, which features are in no way used for living purposes."

Seizing on the words "[t]he limitation on height of buildings and structures . . . shall not apply . . . to . . . towers" and ignoring their context, Nextel claims that its Lincoln Street tower is exempt from any height limitation because it is a structure and a tower. The board rejected this argument. Citing *Carnie* v. *Richmond,* 139 N.H. 21 (1994), the board concluded that "it seems likely that the [Franklin] town meeting of 1960 [which evidently enacted the original version of the by-law at issue here] . . . contemplated towers on the top of buildings, not freestanding towers." Although the language of Franklin's by-law is infected with certain imprecisions, particularly in its use of the word "structure" — e.g., the definition of "building height" provides that "[h]eight limitations shall not apply to chimneys, spires, cupolas, television antennas or other parts of structures which do not enclose potentially habitable floor space" (compare with § 185-13, *supra*) — the board's interpretation is consistent with basic principles of statutory construction as well as common sense. See *Livoli* v. *Zoning Bd. of Appeals of Southborough,* 42 Mass. App. Ct. at 923.

In *Carnie* v. *Richmond, supra,* the zoning ordinance in question excepted chimneys and antennas from the thirty-five foot height limitation. The town had granted a special exception to a ninety to one hundred foot tower to support antennas for a proposed cable television receiving facility, construing the entire structure as an antenna. A Superior Court judge upheld the town's decision. The New Hampshire Supreme Court reversed. Noting that the term antenna was not defined in the zoning ordinance, the court turned to the dictionary and "common sense." 139 N.H. at 22. The court concluded that "when [the town] adopted the zoning ordinance . . . it is more likely that what was contemplated by the term 'antenna' was the ordinary, pre-cable television receiving antenna." *Id.* at 23.

"In the absence of specific precedent on the meaning of a word or phrase in a statute, we are guided by accepted principles of construction. One such principle leads us to relate the words in question to the associated words and phrases in the statutory

context." *Commonwealth* v. *Baker*, 368 Mass. 58, 68 (1975). Here, in addition to towers, the other features included in the Franklin by-law's general height exemption — "chimneys, ventilators, . . . spires [and] other ornamental features of buildings," as well as the cupolas and television antennas mentioned in the definition of building height, are all elements of a building. Compare *Kenney* v. *Building Commr. of Melrose*, 315 Mass. 291, 295 (1943) (conservatory); *Commonwealth* v. *Baker*, 368 Mass. at 68 (bail bonds). See generally 2A Singer, Sutherland Statutory Construction § 47.16, at 183 (5th ed. 1992). In context, the board's conclusion that the exception applies to structures appurtenant to or ornamental to a building and that therefore a free-standing 120 foot tower would not be within the intended meaning of the by-law's height exception, is a reasonable interpretation of the by-law. See *Murray* v. *Board of Appeals of Barnstable*, 22 Mass. App. Ct. 473, 478 (1986); *Livoli* v. *Zoning Bd. of Appeals of Southborough*, 42 Mass. App. Ct. at 922.[2]

3. *The Federal Telecommunications Act.* Nextel also argues, as it did in opposing the town's motions for summary judgment, that the town's order violated provisions of the Federal Telecommunications Act (Act) — that it discriminated against Nextel as compared with other carriers and that it in effect prohibited personal wireless services. See 47 U.S.C. § 332(c)(7)(B)(i)(I) & (II). This was an appropriate argument in Superior Court because the town had ordered Nextel to remove both the Lincoln Street tower and the Forge Hill Road tower. However, the Superior Court judge declined to grant the town's motions for summary judgment as to the Forge Hill tower. The town is no longer demanding the removal of that tower, and all claims regarding that structure have been dismissed by agreement of the parties.

---

[2]On July 23, 1997, before the town filed its motions for summary judgment, Franklin passed an amendment to its zoning by-law. The amendment excludes "cellular telephone service, personal communications service, [and] enhanced specialized mobile radio services" from the definition of "public utility"; adds a new definition for "wireless communications tower"; and establishes an overlay "wireless communications services district." Franklin submitted a copy of the amendment along with an affidavit from the building commissioner in support of its motion for summary judgment. However, the Superior Court judge made no mention of the amendment. Although the amendment is included in the record appendix, neither party argues that it is relevant to this appeal.

As to the Lincoln Street tower, the Superior Court judge found that there was no basis for a claim of discrimination or denial of equal protection because the Lincoln Street tower is the only communications tower in a residential area in the town. The judge further found that with towers of three different providers in the Forge Hill area, Nextel cannot show that the town has prohibited personal wireless services. We see no error in the Superior Court judge's decision on these issues.

"The statutory provision [of the Act] before us, 47 U.S.C. § 332(c)(7), is a deliberate compromise between two competing aims — to facilitate nationally the growth of wireless telephone service and to maintain substantial local control over siting of [communications] towers." *Amherst* v. *Omnipoint Communications Enterprises, Inc.*, 173 F.3d at 13. The provisions setting out the principles governing this compromise are as follows:

"(7) Preservation of local zoning authority

"(A) General authority

Except as provided in this paragraph, nothing in this chapter shall limit or affect the authority of a State or local government or instrumentality thereof over decisions regarding the placement, construction, and modification of personal wireless service facilities.

"(B) Limitations

(i) The regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof —

(I) shall not unreasonably discriminate among providers of functionally equivalent services; and

(II) shall not prohibit or have the effect of prohibiting the provision of personal wireless services."

47 U.S.C. § 332(c)(7). In order to succeed in its claim under § 332(c)(7)(B)(i)(I), Nextel must show that there is a material question of fact as to whether the town's order to remove the Lincoln Street tower constituted unreasonable discrimination. Nextel's arguments on this point are confusing and unpersuasive.

Nextel claims that the Superior Court judge's findings "shelter Cellular One and Bell Atlantic Mobile from competition with Nextel" and therefore discriminate against Nextel in violation of 47 U.S.C. § 332(c)(7)(B)(i)(I). However, we have found no evidence in the record to support this claim. (Perhaps it, too, is a remnant of Nextel's argument in Superior Court in response to the town's effort to require the removal of both of Nextel's towers.) Nextel further argues that "[t]he removal of the Lincoln Street [t]ower would prevent Nextel from providing uninterrupted service in the vital Route 495, Route 109 and Route 126 transportation corridor — uninterrupted service which Cellular One and Bell Atlantic Mobile are able to provide their customers with their current facilities." Its only citation to the record in support of this argument is to a conclusory statement to that effect in the affidavit of Douglas Smith, Nextel's director of technical services. The Rules of Civil Procedure require more. See Mass.R.Civ.P. 56(e), 365 Mass. 825 (1974) ("affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein"). See also Smith & Zobel, Rules Practice § 56.6 (Supp. 2000) ("[An affidavit] must purvey facts, not expressions of belief or understanding; and the facts must be specific and admissible in evidence"). Moreover, the affidavit claims only that without *both* towers there would be a gap in Nextel's service.

Nextel also argues in support of its claim of discrimination that it uses "digital technology different from the cellular technology of its competitors" and that it provides "a unique combination of functions." Even assuming that Nextel successfully formulated an argument based on this allegation below, its argument before this court does not rise to the level of appellate argument required by Mass.R.A.P. 16(a)(4), 367 Mass. 921 (1975). See *Powers* v. *H.B. Smith Co.*, 42 Mass. App. Ct. 657, 664-665 (1997). Nor does the record contain the required support for this argument. See Mass.R.Civ.P. 56(e); *O'Brion, Russell & Co.* v. *LeMay*, 370 Mass. 243 (1976).

In any event, the "Act explicitly contemplates that some discrimination among providers of functionally equivalent services is allowed. Any discrimination need only be reasonable." *Sprint Spectrum, L.P.* v. *Willoth*, 176 F.3d at 638, quoting from *AT & T Wireless PCS, Inc.* v. *City Council of Va. Beach*,

155 F.3d 423, 427 (4th Cir. 1998). "[T]he conferees [did] not intend that if a State or local government grants a permit in a commercial district, it must also grant a permit for a competitor's 50-foot tower in a residential district." H.R. Conf. Rep. No. 104-458 at 208 (1996), reprinted in 1996 U.S.C.C.A.N. 222. "[L]ocal governments may reasonably take the location of the telecommunications tower into consideration in deciding whether . . . to approve an application for construction of wireless telecommunications facilities, even though this may result in discrimination between providers of functionally equivalent services." *Sprint Spectrum, L.P.* v. *Willoth*, 176 F.3d at 639, citing *AT & T Wireless PCS, Inc.* v. *City Council of Va. Beach*, 155 F.3d at 427. See *AT & T Wireless Servs. of Fla., Inc.* v. *Orange County*, 23 F. Supp. 2d 1355, 1363 (M.D. Fla. 1998) ("It is within the prerogatives of a local government to determine that a tower . . . is too imposing for a particular neighborhood"). The Superior Court judge did not err in rejecting Nextel's claim that the town violated the Act's bar against unreasonable discrimination. For the same reasons, there is no merit to Nextel's claim that its constitutional right to equal protection was violated.

Nextel also argues that by determining that Nextel is not a public utility, the by-law "effectively prohibit[s]" commercial mobile radio services carriers from maintaining facilities in Franklin because the telecommunications towers are not otherwise a permitted use. Assuming this argument was raised below, it is without merit on several grounds. First, in view of the fact that Franklin is making no effort to remove any of the Forge Hill Road towers (including that of Nextel), there is no basis for Nextel's argument that the town has prohibited mobile radio services. Second, "[t]he intent of [the Act's bar against prohibition of services is] that bans or policies that have the effect of banning personal wireless services or facilities not be allowed and that decisions be made on a case-by-case basis." H.R. Conf. Rep. No. 104-458 at 208 (1996), reprinted in 1996 U.S.C.C.A.N. 222. "[T]he burden for the carrier invoking this provision is a heavy one: to show from language or circumstances not just that *this* application has been rejected but that further reasonable efforts are so likely to be fruitless that it is a waste of time even to try." *Amherst* v. *Omnipoint Communications Enterprises, Inc.*, 173 F.3d at 14. Nextel's argument that Franklin's by-law effectively prohibits the siting of communica-

tions towers is also undermined by the fact that Nextel never sought a variance or special permit under the by-law. See *id.* (On summary judgment record, applicant failed to show that by-law's variance requirement constituted prohibition of services). Nor did Nextel seek an exemption under G. L. c. 40A, § 3, second par., or make use of either of the stays in order to find alternative sites or prove that it could not do so. See *id.* at 15; *Sprint Spectrum, L.P.* v. *Willoth, supra* at 643. Instead Nextel has consistently claimed it could locate its tower as a matter of right. The denial of a permit under these circumstances does not constitute a prohibition under the Act. See *Aegerter* v. *Delafield,* 174 F.3d 886, 891 (7th Cir. 1999) (Act does not prohibit the application of general nondiscriminatory standards as set out in the town's zoning by-law); *National Telecommunication Advisors, LLC* v. *Selectmen of West Stockbridge,* 27 F. Supp. 2d 284, 287 (D. Mass. 1998) (difficult to argue that denial of single application for special permit constitutes a prohibition); *Omnipoint Communications, Inc.* v. *Scranton,* 36 F. Supp. 2d at 233 ("single denial, even where it results in a gap in services, does not constitute a prohibition against personal wireless services").

4. *Denial of Nextel's rule 60(b) motion.* In April, 1995, in an unrelated matter concerning the construction of communications towers in the town of Sterling, Nextel sought an exemption from the Sterling by-law from the Department of Public Utilities (DPU), on the ground that it was a public service corporation under G. L. c. 40A, § 3, second par. (authorizing petition to DPU for exemptions from local zoning by-laws for public service corporations). In February, 1996, before construction of the Lincoln Street tower had commenced, the DPU denied the exemption and ruled that Nextel was not a public service corporation. The building commissioner relied on the fact that Nextel failed to disclose the DPU ruling as a basis for ordering the dismantling of the Nextel towers in August, 1996. In July, 1996, the DPU vacated its February ruling, consolidated several similar pending cases, and reopened the record for the filing of additional information on the issue by interested parties. Subsequently, on January 8, 1998, the DPU reversed its February, 1996, ruling and concluded that "providers of commercial mobile radio service qualify for public service corporation status . . . pursuant to G. L. c. 40A, § 3."

Nextel has consistently argued that the DPU matter is not

relevant to the issues concerning Nextel's towers in Franklin. Nevertheless, following the January, 1998, DPU decision, Nextel moved for relief from judgment in the cases at issue here under Mass.R.Civ.P. 60(b)(2), (5), and (6). While maintaining its "position that its status as a 'public service corporation' under G. L. c. 40A, § 3 is of no relevance with respect to the issue whether the Lincoln Street [t]ower is permitted as a matter of right under the Franklin [z]oning [b]y-law[]," Nextel claims it was entitled to relief from judgment because the DPU ruling "is a significant changed circumstance which constitutes the discovery of 'newly discovered evidence'" under rule 60(b)(2), or represents changed circumstances warranting relief under rule 60(b)(5), or requires relief under rule 60(b)(6). A judge of the Superior Court denied Nextel's motion on the basis that the judgment was stayed pending appeal in any case. The judge did not abuse her discretion. See *Chiu-Kun Woo* v. *Moy*, 17 Mass. App. Ct. 949, 949-950 (1983). Nextel is correct that the DPU proceeding is not relevant. Both the board and the Superior Court judge made clear that their determinations as to whether Nextel was a public utility depended on their analysis of the Franklin zoning by-law and not the proceedings at the DPU.

5. *Criminal penalties*. Pursuant to the request of the parties, a Wrentham District Court judge ordered that certain questions of law in the criminal action regarding the Lincoln Street tower be reported to this court. While we have some doubt as to whether this case is appropriate for a report under Mass.R.Crim.P. 34, see, e.g., *Commonwealth* v. *Endicott*, 17 Mass. App. Ct. 1025, 1025-1026 (1984), we conclude that in the circumstances "efficiency in the administration of justice would be best served by our answering [most of] the reported question[s] regardless of whether . . . [they are] properly before us." *Commonwealth* v. *Hampe*, 419 Mass. 514, 515 n.1 (1995), quoting from *Matter of a John Doe Grand Jury Investigation*, 408 Mass. 480, 481 (1990). Our answers to the first seven of the eight questions of law (all of which are set out in the Appendix) are as follows: (1) The criminal complaint against Nextel was not premature. See *Commonwealth* v. *A. Graziano, Inc.*, 35 Mass. App. Ct. 69, 72-73 (1993). (2) The Lincoln Street tower does not comply with the Franklin zoning by-law. (3) The decision of the board does not violate the Telecommunications Act of 1996. (4) Nor does the board's decision violate Nextel's right to equal protection. (5) The board's interpretation of the words "public utility"

is not unconstitutional under the ex post facto clause of the Federal or Massachusetts Constitution. See *Matter of Lake*, 428 Mass. 440, 443-444 (1998). See generally *Santiago* v. *Commonwealth*, 428 Mass. 39, 41, cert. denied, 525 U.S. 1003 (1998). (6) The prosecution is not barred by the doctrine of entrapment by estoppel. (7) The prosecution is not a violation of the equal protection clause of the Federal or Massachusetts Constitutions.

The eighth question asks, "Whether the prosecution violates Nextel's fundamental rights, guaranteed by the United States Constitution and the Massachusetts Declaration of Rights, by preventing Nextel's ability to pursue its statutory civil appeal rights pursuant to G. L. c. 40A." The parties' briefs on this issue include arguments regarding the fairness of assessing fines during the stay pending appeal. Indeed, Nextel argues that by granting its motion(s) for stay, the Superior Court judges essentially "authorized [Nextel] to maintain the Lincoln Street [t]ower through the course of this appeal," and that therefore no penalties should accrue during the pendency of the appeal. The case law does not support this argument. See *Burlington Sand & Gravel, Inc.* v. *Harvard*, 31 Mass. App. Ct. 261, 266 (1991) (preliminary injunction granted at applicant's request did not preclude imposition of criminal fines for violations of zoning by-law during period of the injunction). Moreover, Nextel's motion for stay did not mention the issue of the fine.[3]

However, in their "agreed statement of facts and questions of law for report of case," the parties stipulated that "[t]he issue of any fines, if not rendered moot by the Appeals Court's action, shall thereafter be determined by the District Court after a hearing. Nextel reserves all rights as to the issue of fines including, but not limited to, the dates such fines may be levied and the amount of such fines." Since the District Court judge who reported the case adopted this provision in his report, and since we have some doubt about the appropriateness of the report on these facts in any case, we decline to answer the eighth question. But see *Burlington Sand & Gravel, Inc.* v. *Harvard, supra.* Compare *Belfer* v. *Building Commr. of Boston*, 363 Mass. 439

---

[3]We note, however, that on May 19, 1998, a single justice of this court ordered that "there shall be no imposition of fines for daily violations from April 23, 1998 ([the] day this case was deemed ready by this court) until determination of [the] appeal." There was no appeal taken from the order of the single justice.

(1973); *Commonwealth* v. *Yameen*, 401 Mass. 331, 333-334 (1987), cert. denied, 486 U.S. 1008 (1988) (court has discretion to stay license revocation pending appeal where penalty irreparable because no practical compensation available after appeal); Mass.R.Crim.P. 31(b), 378 Mass. 902-903 (1979).

*Conclusion.* In the cases numbered 98-P-309 and 98-P-310, the judgments are affirmed and the orders denying the motions for relief from judgment are affirmed. In the case numbered 98-P-375, the reported questions are answered as follows:

Question 1: "Yes."

Question 2: "No."

Question 3: "No."

Question 4: "No."

Question 5: "No."

Question 6: "No."

Question 7: "No."

*So ordered.*

APPENDIX.

"1. Whether a criminal complaint can issue against Nextel before Nextel has exhausted its statutory right to appeal the ZBA [zoning board of appeals] decision pursuant to G. L. c. 40A.

"2. Whether Nextel's Lincoln Street tower complies with the Franklin Zoning By-Laws.

"3. Whether the ZBA decision violates the Telecommunications Act of 1996.

"4. Whether the ZBA's decision has denied Nextel its right to Equal Protection of the Laws.

"5. Whether the ZBA's decision constitutes a retroactive application of a new definition of 'public utility' which is unconstitutional under the Ex Post Facto clause of the United States Constitution, Art. 1, § 10, or of the Massachusetts Declaration of Rights; Art. XXIV.

"6. Whether the prosecution is barred under the doctrine of entrapment by estoppel.

"7. Whether the prosecution denies Nextel its right to Equal Protection of the Laws by virtue of the Commonwealth's refusal to prosecute Cellular One and Bell Atlantic.

"8. Whether the prosecution violates Nextel's fundamental rights, guaranteed by the United States Constitution and the Massachusetts Declaration of Rights, by preventing Nextel's ability to pursue its statutory civil appeal rights pursuant to G. L. c. 40A."