Agnes, A.J.
In this civil action, the Plaintiff, Kenyon Oil Co., Inc. (“Kenyon”) appeals under G.L.c. 40A, §17 from the decision of the Zoning Board of Appeals of the Town of Sturbridge (“ZBA”) which, in turn, upheld a decision by the town Building Inspector that a neon sign affixed to an interior wall of an Xtra-Mart building on Route 20 was a prohibited “window sign” within the meaning of Section 22.03 of the zoning by-laws of the Town of Sturbridge. The parties have filed cross motions for summary judgment that look to the court to interpret and apply various provisions of the town’s zoning by-law.
FACTS
The essential facts are not in dispute. Thus, I find the following facts based on the affidavits and other supporting materials submitted by the parties. The plaintiff Kenyon owns and operates an Xtra Mart convenience store at 215 Charlton Road (Route 20) in Sturbridge, Mass. Route 20 is a four-lane divided highway with a speed limit of 45 miles per hour. The Xtra Mart building which contains the convenience store is approximately 53, 808 square feet, and is set back from the curb line of the highway a distance of 169 feet. It is approximately 48 feet by 74 feet (3552 square feet). In between Route 20 and the Xtra Mart building are four pump islands of gas pumps which are covered by a canopy. The wall of the building which faces the highway contains several large plate glass windows. Each of these windows “has applied muntin grids, the effect of which results in a diminished ability to view the inside of the building from the outside.” Affidavit of Paul Samar, paragraph 11.[1]
The main entrance to the convenience store is located near the middle of the building facing the highway. The area to the right of this doorway contains the Xtra Mart convenience store and the area to the left contains a Honey Dew Donut store. Each of these locations displays its own items for sale, and has its own counter and cash register. See Affidavit of Paul Samar, Executive Vice-president of Kenyon Oil Company, attachments C, D, and E (photographs of the exterior of the Extra Mart).
One of the signs in question is located on the interior wall of the building above the Honey Dew Donut counter. It is a neon sign which reads “Honey Dew Donuts.” The sign is affixed to a wall facing the front of the building and is located approximately 15 feet back from the front windows. The second sign in question is located on the interior wall of the convenience area. It too is a neon sign which reads “Xtra Mart." This second sign is affixed to a wall facing the front of the building and is located approximately 39½ feet back from the front windows. From the highway, the light produced by these two signs is visible, but neither sign is readable. See Affidavit of Paul Samar, Executive Vice-president of Kenyon Oil Company, attachments A and B (photographs of the signs).
On September 22, 2000, the Building Inspector of the Town of Sturbridge made a determination that “all internally illuminated and neon advertising signs on the wall which attract the eye must be disconnected or removed within seven days from receipt of this letter in accordance with Sturbridge Zoning Bylaw, Chapter 22.” Affidavit of Nicole Caprioli, Esq. attachment 2. (Letter of Mark Lev, Building Inspector.) The building inspector relied on an opinion by Town Counsel, Joel B. Bard, Esq., in which counsel considered several provisions of the zoning bylaw of the Town of Sturbridge (discussed further below) and concluded that the bylaw was designed to and did in fact regulate “signs” and “window signs,” that the interior signs in question qualified as “window signs” under the reasoning of the decision by the Appeals Court in Historic District Commission of Chelmsford v. Kalos, 48 Mass.App.Ct. 919 (2000) (rescript), and that window signs like those in question were prohibited by that section of the bylaw which outlawed “(n]eon or tube signs or outlining . . .” Town of Sturbridge Zoning Bylaw, §22.25(i) as appearing in Affidavit of Nicole Caprioli, Esq. attachment 1. The plaintiff seasonably appealed from this determination to the defendant ZBA. Affidavit of Nicole Caprioli, Esq. attachment 3. On January 22, 2001, the ZBA upheld the determination by the building inspector. Affidavit of Nicole Caprioli, Esq. attachment 4.
COURT’S REASONING
1. Standard of Review
In a case such as this in which a parly requests judicial review of the decision of a zoning board of appeals “the court shall hear all evidence pertinent to the authority of the board or permit granting authority and determine the facts, and upon the facts as so determined, annul such decision if found to exceed the *94 authority of the board or such permit granting authority or make such other decree as justice and equity may require.” G.L.c. 40A, §17. This statute has been considered by our appellate courts on numerous occasions, and guidelines have been established for the exercise of the power of judicial review. It is the court’s responsibility to determine the “legal validity” of the board’s action on the basis of the facts found by the court. “Judicial review is nevertheless circumscribed: the decision of the board ‘cannot be disturbed unless it is based on a legally untenable ground, or is unreasonable, whimsical, capricious or arbitrary.” Roberts v. Southwestern Bell Mobile Systems, Inc., 429 Mass. 478, 486 (1999) (citations and quotations omitted). Accord, Davis v. Zoning Board of Chatham, 52 Mass.App.Ct. 349, 356 (2001) (“Even when a zoning board cites no particularized reasons or any specific evidence for its denial decision, its action will be upheld, as will that of a judge affirming that action under G.L.c. 40A, §17, if a rational basis for the denial exists which is supported by the record”).
3. Disputes Over the Meaning of a Zoning Ordinance or Bylaw
When as in this case there is a dispute about the scope or application of a zoning bylaw, it is the responsibility of this court under G.L.c. 40A, § 17 to determine the meaning of the bylaw. Although the meaning of a term or phrase in a zoning bylaw presents a question of law for the court, deference must be given to the interpretation reached by the local board which enjoys the advantage of greater knowledge of local conditions and the history and purpose of zoning laws in that community. See Manning v. Boston Redevelopment Authority, 400 Mass. 444, 452-53 (1987); Building Commissioner of Franklin v. Disp. Comm., N.E., 48 Mass.App.Ct. 709, 713 (2000); Murray v. Board of Appeals of Barnstable, 22 Mass.App.Ct. 473, 479 (1986). The Court thus may not simply substitute its judgment for that of the local board or authoriiy under the guise of de novo review. See Building Commissioner of Franklin v. Disp. Comm., N.E., 48 Mass.App.Ct. 709, 716-18, rev. den. 431 Mass. 1104 (2000).
In ascertaining the meaning of a zoning ordinance or bylaw, this court must give the words used by the city or town legislative body their common and approved meaning just as it is required to do with respect to statutes. See 1A N.J. Singer, Sutherland On Statutory Construction §30.6 (6th ed. 2002). When the words have a plain and ordinary meaning, they should receive that same meaning from a court unless there is strong reason to believe that another and different meaning was intended. See Iodice v. City of Newton, 397 Mass. 329, 332-33 (1986).
2. Whether the Town of Sturbridge Zoning Bylaw Regulates Neon Signs Attached to Interior Walls of Buildings
Chapter 22 of the Zoning Bylaws of the Town of Sturbridge[2] contains a series of provisions relating to signs. It begins with a statement of legislative purpose: “The provisions of this Chapter Twenty-Two are adopted for the regulation and restriction of billboards, signs and other advertising devices within the Town of Sturbridge on public ways or on private property within public view of [sicl public way ... in order to protect and enhance the visual environment of the Town of Sturbridge and safely, convenience and welfare of its residents.” Chapter Twenty-Two contains a series of definitions of the following terms: Overhanging sign, sign, seasonal sign, temporary sign and window sign. The term “sign” is defined as follows:
Any exterior permanent or temporary structure, billboard, device, letter, word, model, banner, pennant, insignia, trade flag, streamer, emblem, display, or representation used as, or which is in the nature of any advertisement, announcement, amusement device, or direction, or is designed to attract the eye by intermittent repeated motion or illumination and which is on a public way or own private property within public view of public way, public park, reservation or public property on property to which the public has access.
Sturbridge Zoning Bylaw, §22.03 (Definition of “Sign”).
The zoning bylaw also defines “window sign” as any “sign displayed on or within the window of a building, visible from outside the building.” Sturbridge Zoning Bylaw, §22.03 (Definition of “Window Sign”). In Hall v. Kalos, 48 Mass.App.Ct. 919 (2000) (rescript), the Appeals Court was faced with a dispute over the meaning of a regulation adopted by the local historic commission for an historic district in the town of Chelmsford. The regulation in question prohibited neon signs “in or on [a] building or in or on the windows or doors of a building.” The issue was whether this provision applied to a neon sign that was visible from the street and located inside a front window of a video store. The bylaw was adopted pursuant to the authority granted by G.L.c. 40C, §5 to regulate exterior architectural features of a building. In determining that the bylaw authorized the town to prohibit a neon sign affixed to the inside of an exterior window, the court made this observation:
We discern nothing in the use of the word “exterior” in the definition of an “exterior architectural feature” in c. 40C, §5, which would require the commission to limit its review only to a sign which is affixed to a building’s exterior. In this case, all the features of the sign as would be subject to review if it were externally mounted, essentially are projected through the window, and the mere fact that the sign is mounted on the interior side of the window rather than on its external side does not alter the nature of its exposure to public view. The purpose of the sign, manifestly, was to be seen by the public passing the outside of the store. The visual appearance to the public of certain buildings and their windows is central to the preservation and *95 protection purposes of the Historic Districts Act. Significantly, c. 40C, §7, provides in pertinent part: “The commission shall not consider interior arrangements or architectural features not subject to public view.” It is fair to infer from that provision and the emphasis of c. 40C on that which is subject to public view that the commission may consider interior window arrangements which are intended to be and are visible to the public.
Id. at 919-20.
On the basis of this reasoning, the ZBA concluded that an interior mounted neon sign that is clearly visible from the street falls within the definition of a “window sign” and thus is prohibited as a result of 22.25 of the Sturbridge bylaws which provides that the following are not permitted in any zone: “internally illuminated signs,” §22.25(0, and “neon or tube signs or outlining, other than hotel/motel vacancy signs or no-vacancy signs,” §22.25(i).
The plaintiff maintains that it is unnecessary to reach the question of the applicability of Hall v. Kalos, supra, because the sign in question does not fall within the reach of the Sturbridge Zoning Bylaw which applies only to “exterior” signs. See §22.03. Furthermore, the plaintiff argues that Hall v. Kalos, supra, does not supply the rule of decision in this case because the sign in question was not on the outside or the inside of a window and thus cannot be considered a window sign even though it may be visible from outside the store and from the street. Finally, the plaintiff maintains that the defendant’s argument fails because §22.22 of the Sturbridge Zoning Bylaw contains a further regulation of window signs in terms of the percentage of “the individual window area” that may not be exceeded, and this suggests that window signs are confined to signs that are in some way attached to or adjacent to a window.
The defendant’s position rests on the view that a sign on the interior of a building is the functional equivalent of an “exterior sign” when it is clearly visible from the street or roadway. See Affidavit of Nicole B. Capri oli, Esq., attachments 4 & 5 (Decision of ZBA and Opinion of Town Counsel). This construction is consistent with the stated purposes of the Town of Sturbridge Zoning Bylaw (“for the regulation and restriction of... signs and other advertising devices ... on private property within public view of public way ... in order to protect and enhance the visual environment of the Town of Sturbridge .. .”). However, the mere fact that the town has authority to regulate a matter and has expressed an interest in regulating a matter does not mean that the regulation adopted by the town accomplished the purpose of its regulation. The plain meaning of the definitions of “sign” and “window signs” under §22.03 of the Town of Sturbridge Zoning Bylaw is that they refer exclusively to exterior signs or signs that are within or attached to windows, but not to signs attached to interior walls but visible though windows. The word “exterior” in the definition of the term “sign” in §22.03 marks a fundamental distinction between and among the variety of signs that are typically the subject of regulation by zoning authorities. See 3 Patrick J. Ronan, Zoning and Land Use § 17.01 [2][b] (Lexis-Nexis 1978 & Supp. 2003) (listing the types of signs commonly regulated including both interior and exterior signs). It is a fundamental tenet of regulatoiy or statutory construction that each word of the statute or regulation has meaning, and must be considered and given effect in order to cany out the intent of the legislative body. Bankers Life & Casualty Co. v. Commissioner of Insurance, 427 Mass. 136, 140 (1998). See also Kurz v. Board of Appeals of North Reading, 341 Mass. 110, 112 (1960) (everyday words should be interpreted according to the common and approved usage of the language). Undoubtedly, the police power of the Town of Sturbridge, as expressed in §22.01 of its zoning bylaw, empowers the town to regulate interior, illuminated signs visible to pedestrians or persons in vehicles on the roadway or the street outside the building like the ones involved in this case. See, e.g., Asselin v. Town of Conway, 137 N.H. 368, 628 A.2d 247 (1993). However, that is not a sufficient reason to warrant this court in disregarding the plain meaning of the words the town chose to use.
ORDER
The municipal regulation of signs that are on or within buildings and other structures based on aesthetic concerns is widely accepted. See 3 Patrick J. Ronan, Zoning and Land Use §17.01[1] (Lexis-Nexis 1978 & Supp. 2003). See, e.g., John Donnelly & Sons, Inc. V. Outdoor Advertising Board, 369 Mass. 206 (1975). A city or town which sets out to establish such a regulatoiy framework has a myriad of choices based on factors such as location, dimensions, illumination, and material, or a combination of these factors.[3] In the present case, the town of Sturbridge has adopted a regulatoiy framework that is directed at exterior signs or signs that are on or within a window. It has not specifically regulated interior wall signs. Although the town has expressed the view that a purpose of its regulation of signs is “to enhance the visual environment of the Town of Sturbridge,” Sturbridge Zoning Bylaw §22.01, legislative purpose cannot trump the plain meaning of the language of a legislative enactment.
For the above reasons, the plaintiffs motion for summary judgment is ALLOWED and the defendants’ cross motion for summary judgment is DENIED. The decision of the Town of Sturbridge Zoning Board of Appeals upholding the determination by the Building Inspector that the neon signs attached to interior walls of the Xtra Mart in Sturbridge are “window signs” within the meaning of §22.03 or “internally illuminated signs” within the meaning of §22.25 of the Sturbridge Zoning Bylaw is REVERSED. A judgment should be entered for the plaintiff.

 Recording to the Plaintiffs statement of undisputed material facts, “[tjhese muntin grids on the windows simulate the colonial effect of the window being comprised of forty eight panes of glass.”

 References in the text to the Zoning Bylaws of the Town of Sturbridge are to the text of those bylaws as it appears in Affidavit of Nicole Caprioli, Esq. attachment 1.

 Other communities have chosen to address the problem of interior signs that negatively impact on the visual environment in a variety of ways. For example, it appears that the City of Cambridge defines a sign in very broad terms as any device, structure, or advertisement visible from the outside of a building. §7.13.1. It also defines “wall sign” in a way that includes any sign parallel to the plane of the building to which it is attached." §7.13.2. See generally City of Cambridge Zoning Ordinance, Article 7.000 (as Amended through June 16, 2003), as appearing in http://www.cambridgema.gov/~CDD/commplan/zomng/ zord/?tnltext=Zoning%20Ordinance. The City of Wakefield zoning law also contains a broad definition of a sign, further defines a great variety of types of signs, both interior and exterior, and prohibits any illuminated sign from producing more than a “footcandle” of illumination four feet from the sign. City of Wakefield Zoning Ordinance Article XIII, Signs, §190-74. See http://64.4.18.250/cgibin/getmsg?curmbox=F000000001&a=2c2da8609b26fbb6 alfee5fe2.